v.

**CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky; and M.W.C., a child, Appellees.**

**No. 2011–CA–000504–ME.**

Court of Appeals of Kentucky.

Feb. 24, 2012.

Marianne S. Chevalier, Ft. Mitchell, KY, for appellant.

Kelly S. Wiley, Covington, KY, for appellees.

Before ACREE, CAPERTON and VANMETER, Judges.

*OPINION*

ACREE, Judge:

This is an appeal from the Kenton Family Court's January 11, 2011 order terminating the parental rights of appellant, A.C., with regard to her minor son, M.W.C. In the course of our review, we are called upon to determine whether it is proper to extend the briefing procedures of *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), to appeals from orders terminating parental rights and, if so, whether the appeal

before us is, in fact, wholly frivolous. We answer both questions affirmatively and affirm the family court's judgment.

## I. *Background*

A.C. is the natural mother of M.W.C., a male child born in 1999. On or about January 8, 2009, the Cabinet for Health and Family Services (the "Cabinet") filed a petition in the Kenton Family Court claiming A.C. abused M.W.C. through the use of excessive discipline and "tasing," and sought to remove M.W.C. from A.C.'s care. On the same date, the family court committed M.W.C. to the Cabinet's custody. Soon thereafter the family court adjudicated M.W.C. a dependent child.

The Cabinet filed its petition for involuntary termination of A.C.'s parental rights on March 10, 2010. Following several delays, the Cabinet's petition came on for trial on December 10, 2010. At trial, Patricia Moore, a licensed clinical social worker, testified that M.W.C. claimed A.C. beat him with a belt; forced him to stand in a squatting position holding cans until his leg shook and buckled; and "tased" him on the arms, back, and legs with a stun gun, causing his body to jerk. M.W.C. explained the stun gun's electrical buzz disturbed his stepfather, so A.C. would lock M.W.C. and the other children residing in the home in the kitchen and "stun" each child until one admitted to the particular problem A.C. was concerned with at the time. Moore opined these discipline techniques occurred over a substantial period of time. Additionally, the evidence revealed that M.W.C. had witnessed high-intensity arguments between his stepfather and A.C., and that M.W.C. had been treated by several medical and mental health providers since 2006 for sui-

cidal thoughts, depression, and aggressive behavior, yet A.C. failed to consistently provide him with needed therapy and medication. Moore testified that, since M.W.C.'s placement in the Diocesan Catholic Children's Home, where he remained as of the trial date,[1] his emotional distress and aggressive behavior noticeably subsided. Moore also conveyed M.W.C's expression that he loved and missed A.C. but he was concerned for his safety if returned to A.C.'s custody.

A.C. testified regarding her care of M.W.C. and her current status. A.C. explained that she was living in Ohio and taking classes at a local university. A.C. claimed she was employed at Kohl's District Center but had never held a job for an extended period of time. A.C. admitted she had no other source of income except for a student loan. A.C. categorically denied M.W.C.'s allegations of abuse. When asked about the facts giving rise to her guilty plea to harassment without physical injury, a Class B misdemeanor, relative to two other children living in her home, A.C. agreed only that she pleaded guilty to "criminal spanking." A.C. admitted that she had not provided M.W.C. with any essential care items—food, clothing, socks, shoes—since his removal from her care in 2009, but claimed she provided a few things for him during their visits.

Lauren Evans, a social worker with the Cabinet, clarified the services offered by the Cabinet to A.C. Evans explained A.C. failed to cooperate with the Cabinet during its investigation, and described A.C. as resistant to services. Evans testified that A.C. refused to initially complete parenting classes, and failed both to complete a psychological evaluation and to attend Al-

---

1. M.W.C. was supposedly transitioning from the Diocesan Catholic Children's Home to private foster care in December of 2010.

coholics Anonymous meetings. A.C. did engage in individual mental health counseling. In Evans's opinion, A.C. failed to recognize she needed to change her discipline techniques, and demonstrated an unwillingness to change her parental methods.

With respect to M.W.C., Evans testified that since his admission to the Diocesan Catholic Children's Home, his disruptive behavior during school decreased and he received grades of all As and Bs. Evans also observed that M.W.C. is now more friendly, affectionate, trusting, and open to conversation, is able to verbally communicate his feelings, and retains a sense of safety. Evans concluded that M.W.C. is happier and there is a high probability that M.W.C. will be adopted.

Following the hearing, on January 11, 2011, the family court entered findings of fact and conclusions of law, and an order terminating A.C.'s parental rights as to M.W.C. The order also committed M.W.C. to the continued custody of the Cabinet, and vested the Cabinet with the authority to place M.W.C. for adoption.[2] The family court determined: M.W.C. was an abused and neglected child pursuant to Kentucky Revised Statutes (KRS) 600.020(1); it was in M.W.C.'s best interest to terminate A.C.'s parental rights; A.C. continuously and repeatedly inflicted and allowed her husband to inflict physical and emotional injury upon M.W.C. by other than acciden-

tal means; A.C. abandoned M.W.C. for a period of no less than ninety days; A.C., for a period of not less than six months, continuously or repeatedly failed, refused to provide, or was incapable of providing essential parental care for M.W.C. and there was no reasonable expectation of improvement in parental care and protection; and A.C., for reasons other than poverty alone, had continuously and repeatedly failed to provide or was incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the children's well-being and there is no reasonable expectation of significant improvement in the parental conduct in the immediately foreseeable future, considering the age of the child.

## II. *Procedure before the Court of Appeals*

A.C. timely appealed the family court's order. On May 19, 2011, A.C.'s court-appointed counsel filed an appellate brief in which she stated that she is unable to find any meritorious assignment of error to raise on A.C.'s behalf; she requested that this Court independently review the record in accordance with *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400, to preserve A.C.'s right to fundamental fairness.[3] Thereafter, on June 3, 2011, A.C.'s counsel filed a motion to withdraw pursuant to *Anders*; on June 28, 2011, that motion was granted.[4] In the same order, this Court

---

2. In the same order, the family court also granted the petition to voluntarily terminate the parental rights of G.B., M.W.C.'s natural father. G.B. has not appealed that determination.

3. Both the Cabinet and M.W.C's guardian *ad litem* filed appellees' briefs setting forth the facts of the case, and agreeing with appointed counsel's estimate that there was no basis for a nonfrivolous appeal.

4. As discussed below, *Anders* procedures require the appellate court to refrain from ruling on a motion to withdraw until the court has reviewed the appellate brief and agreed with counsel's assessment that there are no nonfrivolous arguments for reversal. *Penson v. Ohio*, 488 U.S. 75, 82–83, 109 S.Ct. 346, 351, 102 L.Ed.2d 300 (1988); *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. Our reading of the June 28, 2011 order reveals that, as of that date, this Court had not considered whether nonfrivolous arguments were avail-

afforded A.C. fifteen days to notify this Court whether she intended to retain new counsel and, if A.C. chose not to retain new counsel, thirty days to file a supplemental brief raising any issues she believed to be meritorious. To this date, A.C. has not retained new counsel nor has she filed a supplemental *pro se* brief.

Once the time allotted in the June 28, 2011 order passed, the Cabinet filed a Motion to Dismiss and Motion to Advance, claiming A.C. failed to provide this Court with any claims of error and since no party has raised an issue necessitating merit review, no "case or controversy" exists, thereby justifying dismissal of A.C.'s appeal.[5] On December 9, 2011, the Cabinet renewed its Motion to Dismiss. All these matters are now ripe for our review.

### III. *Applicability of Anders to Termination of Parental Rights Appeals*

This case directly presents the question whether Kentucky will apply the principles and procedures of the landmark—and at times controversial[6]—case of *Anders v.*

*California* to appeals from orders terminating parental rights.

In *Anders*, the United States Supreme Court addressed "the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." 386 U.S. at 739, 87 S.Ct. at 1397. In so doing, the Supreme Court established a "prophylactic framework"—now commonly known as "*Anders* procedures" or an "*Anders* brief"—to safeguard a criminal appellant's constitutional right to counsel when the appellant's court-appointed attorney wishes to withdraw from a claimed no-merit appeal. *Pennsylvania v. Finley*, 481 U.S. 551, 554–55, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). The Supreme Court declared:

> [i]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might argu-

able; therefore, this Court should not have granted the motion to withdraw at that time. However, because we are convinced no nonfrivolous argument exists on appeal, we need not address whether new counsel should be appointed in this case.

5. These motions were initially considered by a different panel of this Court which, like the panel that preceded it, did not consider whether any nonfrivolous arguments could be asserted on A.C.'s behalf. Instead, the motions were properly passed to this merits panel and are decided as part of this opinion.

6. Several states—Alaska, Georgia, Hawaii, Idaho, Indiana, Kansas, Maine, Missouri, Nevada, New Hampshire, and North Dakota—have chosen not to adopt *Anders* procedures at all. *Hertz v. State*, 755 P.2d 406 (Alaska App.1988), *overruled on other grounds by Grinols v. State*, 74 P.3d 889 (Alaska 2003); *Huguley v. State*, 253 Ga. 709, 324 S.E.2d 729

(1985); *In re Attorney's Fees of Mohr*, 97 Hawai'i 1, 32 P.3d 647 (2001); *State v. McKenney*, 98 Idaho 551, 568 P.2d 1213 (1977); *Mosley v. State*, 908 N.E.2d 599 (Ind. 2009); *State v. Junkins*, 779 A.2d 948 (Me. 2001); *State v. Gates*, 466 S.W.2d 681 (Mo. 1971); *Ramos v. State*, 113 Nev. 1081, 944 P.2d 856 (1997); *State v. Cigic*, 138 N.H. 313, 639 A.2d 251 (1994); and *State v. Lewis*, 291 N.W.2d 735 (N.D.1980). Additionally, Kansas allegedly has an "unwritten policy of not accepting *Anders* briefs." Martha C. Warner, *Anders in the Fifty States: Some Appellants' Equal Protection Is More Equal than Others,'* 23 Fla. St. U.L.Rev. 625, 651 (1996). Also, *Anders* briefs are supposedly not filed in any case—civil or criminal—in Maryland, Nebraska, and New Jersey because public defenders either chose not or were urged not to file such briefs. *Id.*

ably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders,* 386 U.S. at 744, 87 S.Ct. at 1400. In so ruling, the Court limited its decision to criminal cases in which the Sixth Amendment right to counsel applied and, as a result, declined to extend its decision, on constitutional grounds, to civil cases. *See Finley,* 481 U.S. at 555, 107 S.Ct. at 1993 ("*Anders* established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel."); *Lassiter v. Dep't of Social Services of Durham County, N.C.,* 452 U.S. 18, 31–32, 101 S.Ct. 2153, 2162, 68 L.Ed.2d 640 (1981).

In 1971, our Supreme Court adopted, *albeit* indirectly, the *Anders* principle and began accepting *Anders* briefs in no-merit appeals in criminal proceedings. *Fite v. Commonwealth,* 469 S.W.2d 357, 358 (Ky.

1971); *see also Fraser v. Commonwealth,* 59 S.W.3d 448, 454 (Ky.2001) (noting, pursuant to *Fite,* Kentucky has adopted *Anders* proceedings in criminal appeals). Since that time, Kentucky appellate courts have consistently permitted appointed counsel to file *Anders* briefs in direct appeals of criminal matters. *See, e.g., Hughes v. Commonwealth,* 875 S.W.2d 99, 101 (Ky.1994) (denying counsel's motion to withdraw, pursuant to *Anders,* on the ground that the appeal was not wholly frivolous); *Caldwell v. Commonwealth,* No. 2007–CA–001922–MR, 2009 WL 4882826, at *1 (Ky.App. Dec. 18, 2009); *Young v. Commonwealth,* No. 2006–CA–001092–MR, 2007 WL 4125899, at *1 (Ky. App. Nov. 21, 2007).[7]

However, we have not yet addressed whether *Anders* proceedings should be extended to cases outside the criminal context and, particularly, to termination of parental rights matters.[8] *See C.R.G. v. Cabinet for Health and Family Services,* 297 S.W.3d 914, 915 (Ky.App.2009)(declining to "address whether *Anders* may be invoked in a termination of parental rights case"). We do so now.

■ Initially, we must determine whether indigent parents are entitled to appointed counsel on appeal. But for a constitutional or statutory right to appellate counsel, the attorney can simply terminate his or her relationship with the indigent parent and avoid submitting a frivolous appeal to this Court, thus elimi-

---

**7.** We cite *Caldwell* and *Young* not for their precedential value, but to show a continuing pattern in this Commonwealth of allowing *Anders* briefs in criminal appeals.

**8.** We acknowledge that several unpublished opinions of this Court apply *Anders* principles to termination of parental rights cases. *See L.D. v. Commonwealth, Cabinet for Health and Family Services,* No. 2007–CA–000782–ME, 2008 WL 2468779, at *1–2 (Ky.App. June 20,

2008); *R.L.O. v. Commonwealth, Cabinet for Health and Family Services,* No. 2007–CA–000756–ME, 2008 WL 612388, at *1–2 (Ky. App. March 7, 2008); *O.M.F.L. v. Kentucky Cabinet for Health and Family Services and M.A.O.L.,* No. 2006–CA–001544–ME, 2007 WL 2069817, at*1–3 (Ky.App. July 20, 2007). None of these opinions, however, directly addresses the applicability of *Anders* procedures to termination of parental rights cases.

nating the need for *Anders*-like procedures in termination of parental rights cases.

The United States Supreme Court has found no absolute right to counsel in termination cases under the umbrella of the United States Constitution but instead has held the appointment of counsel need only be made on a case-by-case basis. *Lassiter*, 452 U.S. at 31–32, 101 S.Ct. at 2162; *see also A.P. v. Commonwealth, Cabinet for Health and Family Services*, 270 S.W.3d 418, 420 (Ky.App.2008). Kentucky's General Assembly eliminated the need for a case-by-case determination by enacting KRS 625.080(3), which provides, in pertinent part, that "parents have the right to legal representation in involuntary termination actions. The Circuit Court shall determine if the parent is indigent and, therefore, entitled to counsel[.]" KRS 625.080(3); *see also Z.T. v. M.T.*, 258 S.W.3d 31, 36 (Ky.App.2008).

While KRS 625.080(3) does not limit appointed representation to trial proceedings, neither does it explicitly allow for appointed counsel during the appellate process. In construing KRS 625.080(3), our purpose "is to give effect to the intent of the General Assembly, and we derive that intent, if at all possible, from the plain meaning of the language the General Assembly chose." *Bowling v. Kentucky Dep't of Corrections*, 301 S.W.3d 478, 490–91 (Ky.2009). To that end, "the language of the statute is to be given full effect as written." *Mohammad v. Commonwealth*, 202 S.W.3d 589, 590 (Ky.2006). We believe a fair reading of KRS 625.080(3) reveals the Kentucky legislature intended to afford indigent parents the benefits of counsel during the entire course of the termination proceedings, including any appeal.

This Court has interpreted KRS 625.080(3) as entitling indigent parents to counsel "throughout *all* [termination] proceedings." *A.P.*, 270 S.W.3d at 421 (emphasis added); *see also R.V. v. Commonwealth, Dep't for Health and Family Services*, 242 S.W.3d 669, 672–73 (Ky. App.2007) (holding "the parental rights of a child may not be terminated unless that parent has been represented by counsel at every critical stage of the proceedings"). In *Z.T. v. M.T.*, 258 S.W.3d 31, this Court concluded that an indigent parent's right to representation during every critical stage of the termination proceedings included those stages leading up to termination, such as the underlying dependency matter. *Id.* at 36. Logically, an indigent parent's right to counsel would also apply to all critical stages of proceedings following termination, including the appeals process.

Further, this Court has indicated an attorney who represents an indigent parent on appeal is entitled to a portion of the statutory fees authorized in KRS 625.080(3), provided the fee award has not been exhausted at the trial level. *See Commonwealth v. Coleman*, 699 S.W.2d 755, 756 (Ky.App.1985) (explaining that KRS 199.603(8)—now KRS 625.080(3)—provides the maximum amount of fees to be awarded to appointed counsel "with no distinction being drawn between trial and appellate advocacy" and "whether the rendered services are provided at trial, or on appeal, or both"). Moreover, as explained by another panel of this Court in the unpublished opinion *Commonwealth, Cabinet for Health and Family Services v. K.B.H.*, No. 2004–CA–001760–ME, 2005 WL 2108126, at *3 (Ky.App. Sept. 2, 2005):[9]

---

**9.** We cite this unpublished opinion pursuant to Kentucky Rules of Civil Procedure (CR)76.28(4)(c), which provides, "unpublished Kentucky appellate decisions, rendered

Kentucky Rules of Professional Conduct 1.16 impliedly protects an indigent parent from having to choose between advocacy at trial or on appeal. As the comment to Rule 1.16 stresses, "[a] lawyer should not accept representation in a matter unless it can be performed ... to completion." Completion presumes seeing the case through an appeal if so desired by the client.

This analysis is no less applicable here and we conclude the Kentucky legislature, by virtue of KRS 625.080(3), intended to provide for the appointment of counsel for indigent parents at all stages of the termination proceedings, including any appeal.[10]

■ While we have concluded that an indigent parent defending a termination of parental rights action enjoys a statutory right to counsel during the appeal, that right to counsel "does not include the right [of an indigent parent] to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith v. Robbins,* 528 U.S. 259, 278, 120 S.Ct. 746, 760, 145 L.Ed.2d 756 (2000). This raises a new question: How will Kentucky jurisprudence expect an indigent parent and his or her attorney to proceed when, in the opinion of the attorney, there are no nonfrivolous grounds for appealing a termination of parental rights?

There are three possible answers to this question. First, the attorney could withdraw from representation in reliance on Kentucky Rules of the Supreme Court (SCR) 3.130 (1.16(a)(1))—"representation will result in violation of the Rules of Professional Conduct[,]" namely, SCR 3.130(3.1), prohibiting pursuit of a frivolous appeal. Second, the court could protect the attorney from sanction for filing a frivolous appeal by ordering her to "continue representation notwithstanding good cause for terminating the representation." SCR 3.130 (1.16(c)). Third, we could apply the *Anders* procedure. We find the third option most satisfactory.

Courts in many states have grappled with the issue of *Anders'* applicability to appeals in termination cases and, while a split exists among those jurisdictions, most have concluded *Anders* procedures are appropriate in and extend to appeals from orders terminating parental rights. *State ex rel. D.A.G.,* 935 So.2d 216, 218 (La.App. 1st Cir.2006); *In the Matter of Justina Rose D.,* 28 A.D.3d 659, 813 N.Y.S.2d 229, 231 (2006); *Linker–Flores v. Arkansas Dep't of Human Services,* 359 Ark. 131, 194 S.W.3d 739, 747 (2004); *People ex rel. S.D. Dep't of Social Services,* 678 N.W.2d 594, 598 (S.D.2004); *In re D.E.S.,* 135 S.W.3d 326, 330 (Tex.App.–Houston [14th

after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court."

**10.** This Court believes that counsel who accepts appointment to represent an indigent parent in a termination case is obligated to see the case through the entire proceeding, including the appeals process, despite the rather meager compensation provided appointed counsel. *See* KRS 625.080(3) (authorizing a $500 maximum fee for appointed counsel in termination of parental rights cases); *K.B.H.,* 2005 WL 2108126, at *3 (explaining "the amount of $500 provided by

KRS 625.080(3) is the statutory maximum that may be awarded to appointed counsel in termination proceedings—regardless of whether the services are rendered at trial, on appeal, or in the course of both stages of litigation"); *Dep't for Human Resources v. Paulson,* 622 S.W.2d 508, 509 (Ky.App.1981) (emphasizing "acceptance of the appointment" to represent an indigent parent in a termination of parental rights matter is voluntary and, in doing so, counsel has advance statutory notice of the "limited fee" available. Accordingly, appointed counsel is not "unconstitutionally deprived of his property or time").

Dist.] 2004); *In re H.E.*, 312 Mont. 182, 59 P.3d 29, 32 (2002); *State ex rel. Children, Youth and Fam. Dep't v. Alicia P.*, 127 N.M. 664, 986 P.2d 460, 462 (N.M.App. 1998); *L.C. v. State*, 963 P.2d 761, 764 (Utah App.1998); *J.K. v. Lee County Dep't of Human Resources*, 668 So.2d 813, 816 (Ala.Civ.App.1995); *Debra M. v. Dane County Human Services*, 185 Wis.2d 918, 520 N.W.2d 291 (Wis.App.1994) (Table); [11] *In re Shanbash C.*, 1994 WL 567859, at *9 (Conn.Super.Ct. Sept. 29, 1994); *In re V.E.*, 417 Pa.Super. 68, 611 A.2d 1267, 1275 (1992); *Morris v. Lucas County Children Services Bd.*, 49 Ohio App.3d 86, 550 N.E.2d 980, 981 (1989); *Matter of Keller*, 138 Ill.App.3d 746, 93 Ill.Dec. 190, 486 N.E.2d 291, 292 (1985).

In so concluding, many states reasoned that the nature of the case,

> *i.e.*, civil rather than criminal, makes no difference in the duties court-appointed counsel owes his or her client. From counsel's perspective, counsel's duty to competently and diligently represent the client is exactly the same in a civil appeal from an order terminating parental rights as in an appeal from a criminal conviction. Moreover, in both criminal and termination of parental rights cases, counsel may conclude, after thoroughly and conscientiously examining the case, that a case lacks any nonfrivolous issues for appeal. Despite the civil or criminal nature of the appeal, counsel in such a situation faces the same dilemma of having to diligently represent the indigent client who wants to appeal while still

complying with counsel's other ethical duties as a member of the Bar.

*L.C.*, 963 P.2d at 763–64; *In re K.S.M.*, 61 S.W.3d 632, 634 (Tex.App.2001); *People ex rel. S.D. Dep't of Social Services*, 678 N.W.2d at 598; *Linker–Flores*, 194 S.W.3d at 746; *In the Interest of D.E.S., A.L.G., C.W.M.G., II, and M.P.G.*, 135 S.W.3d 326, 329 (Tex.App.2004).

This same dilemma faces Kentucky practitioners. *Compare* SCR 3.130, Preamble, III (requiring an attorney to "zealously assert the client's position under the rules of the adversary system") *and* SCR 3.130(1.2)(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation.") *with* SCR 3.130(3.1) ("A lawyer shall not knowingly bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.") *and* SCR 3.130(3.3) (requiring candor towards the tribunal). Undoubtedly, Kentucky's Rules of Professional Conduct apply uniformly despite whether the case at issue is civil or criminal in nature. Moreover, if an attorney brings a frivolous appeal, whether civil or criminal in nature, sanctions may be imposed pursuant to Kentucky Rules of Civil Procedure (CR) 73.02(4).[12]

Additionally, courts in Alabama and Ohio recognize there is no practical difference in compelling appointed counsel to "continue with the appeal, thus requiring counsel to raise frivolous issues that the appellate court has to review [as could be done pursuant to SCR 3.130 (1.16(c)) ], and allowing counsel to file an *Anders* brief

---

11. In Wisconsin, pursuant to statute, if appointed counsel "concludes that direct appeal on behalf of the [parent] would be frivolous and without any arguable merit within the meaning of *Anders*" then counsel shall file a "no-merit report" with the appeals court. Wisconsin Statutes Annotated 809.32(1)(a).

12. "If an appellate court determines that an appeal or motion is frivolous, it may award just damages and single or double costs to the appellee or respondent. An appeal or motion is frivolous if the court finds that it is so totally lacking in merit that it appears to have been taken in bad faith." CR 73.02(4).

raising [the same] issues, but notifying the court that counsel believes an appeal would be frivolous." *J.K.,* 668 So.2d at 815–16; *In re D.C.,* No. C–090466, 2009 WL 3400930, at *1 (Ohio App. Oct. 23, 2009). Despite the type of brief filed, appointed counsel ensures any and all issues which contain even a mere scintilla of merit or less are brought to the attention of this Court.

*Anders* proceedings allow appointed counsel to juggle his or her dual—and at times competing—obligations to both his or her client and the court, while at the same time protecting the indigent parent's statutory right to counsel. We agree with the Arkansas Supreme Court's sentiments that *Anders* procedures provide "a correct balancing of the rights of indigent parents and the obligations of their appointed attorneys." *Linker–Flores,* 194 S.W.3d at 745.

We are mindful that other states analyzing this issue have reached the opposite conclusion, thereby declining to extend *Anders* to termination cases. *A.L.L. v. People,* 226 P.3d 1054, 1063–64 (Colo.2010); *N.S.H. v. Florida Dep't of Children and Family Services,* 843 So.2d 898, 900 (Fla. 2003); *In re Harrison,* 136 N.C.App. 831, 526 S.E.2d 502, 503 (2000); *Denise H. v. Arizona Dep't of Economic Sec.,* 193 Ariz. 257, 972 P.2d 241, 244 (Ariz.App.1998); *In re Sade C.,* 13 Cal.4th 952, 55 Cal.Rptr.2d 771, 920 P.2d 716, 734 (1996); *Care and Protection of Valerie,* 403 Mass. 317, 529 N.E.2d 146, 147 (1988); *In re Welfare of Hall,* 99 Wash.2d 842, 664 P.2d 1245, 1247 (1983). These courts have not adopted any uniform approach nor do they share a common rationale.

Some courts claim *Anders'* procedural steps result in an extended briefing schedule. *See A.L.L.,* 226 P.3d at 1063 (refusing to extend *Anders* to dependency, neglect, and termination proceedings claiming its

procedures do little for judicial economy since the court itself must "thoroughly review the record in order to ensure counsel has not missed any appealable issues and consider—at least to some extent—the merits of any issues the court identifies in the record or that the attorney has identified in her briefs"). The assertion is that this additional time harms the child at issue by requiring the child to remain in a state of flux and depriving the child of permanency. *See Cabinet for Families and Children v. G.C.W.,* 139 S.W.3d 172 (Ky.App.2004) (emphasizing the foster care system is a mere temporary solution and permanency for the child(ren) involved is paramount); *N.S.H.,* 843 So.2d at 903; *Sade C.,* 55 Cal.Rptr.2d 771, 920 P.2d at 741.

While any delay in the appellate process and resulting permanency of the child is undesired, *Anders* procedures extend the briefing schedule by at most 30 days to allow the indigent parent to file a *pro se* brief. This delay is insignificant in the context of the entire termination proceeding and corresponding appellate process. *See Linker–Flores,* 194 S.W.3d at 747 (finding "the additional time involved is hardly sufficient to justify doing away with procedures to protect the parent's right to counsel on appeal"). Moreover, while *Anders* procedures add to the time at the end of the briefing schedule, the *Anders* brief itself should, and typically will, expedite the reviewing court's work by identifying and clarifying at least the frivolous arguments; if the Court had nothing but a legally unsophisticated *pro se* brief to guide its review, the time saved by a shorter briefing schedule might well be lost again.

Other courts claim *Anders* procedures compromise the appellate court's role as a neutral decision maker by obliging the court to act as a quasi-advocate for the

indigent parent. *See A.L.L.*, 226 P.3d at 1063 (claiming the *Anders* procedure "requires appellate courts to play the roles of both advocate and tribunal"); *N.S.H.*, 843 So.2d at 901–02 (declining to extend *Anders* procedures to termination cases because the court could not "justify thrusting appellate courts into a position that represents a departure from the court's traditional role as a neutral decision maker"). We do not find this argument persuasive. First, *Anders* procedures do not require appellate courts to flesh out every conceivable argument appellant could have raised on appeal; instead, our review is akin to palpable error review requiring us only to ascertain error which "affects the substantial rights of a party." CR 61.02. Second, in any appeal of an order terminating a person's parental rights, a full review of the record is often necessary to determine whether clear and convincing evidence supports the family court's judgment. Accordingly, this Court's role does not morph from tribunal to advocate by virtue of *Anders* procedures.

Finally, a handful of states have emphasized that "the right of concern in *Anders* was the federal constitutional right to counsel," a right which does not extend to indigent parents in termination of parental rights matters. *Lassiter*, 452 U.S. at 31–32, 101 S.Ct. at 2162; *Hall*, 664 P.2d at 1247–48; *Harrison*, 136 N.C.App. at 832–33, 526 S.E.2d at 502–03. Unlike a criminal defendant, an indigent parent in a proceeding to terminate parental rights has no constitutional right to court-appointed counsel; if the right exists, it derives not from the constitution but from state statute. *Lassiter*, 452 U.S. at 31–32, 101 S.Ct. at 2162; *Hall*, 664 P.2d at 1247–48. To

that end—so goes the analysis in those cases—because *Anders'* prophylactic procedures are derived from a criminal defendant's Sixth Amendment right to counsel, the procedures are inapplicable to appeals of an order terminating a parent's parental rights in which the Sixth Amendment is not implicated. *Hall, id.; Harrison*, 136 N.C.App. at 832–33, 526 S.E.2d at 502–03; *Sade C.*, 55 Cal.Rptr.2d 771, 920 P.2d at 733.

While we recognize *Anders*-type proceedings are only *required* in the criminal context where the indigent defendant enjoys a constitutional right to counsel,[13] *see Finley*, 481 U.S. at 555, 107 S.Ct. at 1993, we are not prohibited from extending *Anders*-like proceedings to termination of parental rights cases. We do so today because we find the source of the right to counsel irrelevant; as long as there is a right to counsel—wheresoever that right is found—the conflict between an attorney's duty to his client and his duty to the court remains. That conflict warrants the utilization of *Anders*-type briefs and procedures. Moreover, if *Anders* procedures are sufficient to protect an appellant's *constitutional* right to counsel—an arena in which the courts tend to erect stringent safeguards—the same procedures should certainly be adequate in termination of parental rights cases as well. *J.K.*, 668 So.2d at 816. Just as the United States Supreme Court erected safeguards in *Anders* to vindicate a defendant's constitutional right to appellate counsel in the criminal context, *see Smith*, 528 U.S. at 273, 120 S.Ct. at 757, we believe the safeguards set forth in this opinion satisfactorily vindicate an indigent parent's statuto-

---

**13.** In *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), the Supreme Court clarified that states are not bound by the precise procedures articulated in *Anders*, but instead enjoy broad discretion, subject to constitutional limitations, to mold guiding principles and procedures for managing *Anders* briefs and meritless appeals. *Id.* at 273, 120 S.Ct. at 757.

ry right to appellate counsel in termination of parental rights cases.

In sum, we are persuaded by the reasoning of the majority of states addressing the issue and agree the "benefits from the *Anders* protections to the indigent parent's right to counsel outweigh" any potential harm. *Linker–Flores*, 194 S.W.3d at 747. Accordingly, we hold the procedures set forth in *Anders*, as so modified by this opinion, apply to appeals from orders terminating parental rights in which an indigent parent has court-appointed counsel who concludes the appeal lacks any meritorious issues which might support the appeal, and is, therefore, frivolous.

We believe it prudent to include a procedural blueprint to assist the bar in cases in which an *Anders* brief is warranted. Particularly, we are compelled to emphasize that an *Anders* brief should not be used as an escape provision for a court-appointed counsel whose payments have exhausted, but should only be filed when appointed counsel has conducted a thorough, good-faith review of the record and can ascertain absolutely no meritorious issue to raise on appeal. *See Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. In the context of termination of parental rights cases, counsel should, at a minimum, review the circuit court's (1) neglect and/or abuse determination; (2) finding of unfitness under KRS 625.090(2); and (3) best-interests determination.

In accordance with *Anders*, once counsel has reached the conclusion that the appeal is wholly frivolous, counsel "should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. That means counsel must accomplish all this within the thirty-day window allowed in CR 76.12(2)(a)(i) for

filing briefs in such a case. The *Anders* brief shall both refer to "anything in the record that might arguably support the appeal[,]" *Anders, id., and* objectively demonstrate the issues identified are wholly frivolous. *See In re S.M.*, 314 Ill.App.3d 682, 247 Ill.Dec. 424, 732 N.E.2d 140, 143 (2002) (requiring appointed counsel to "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous").

Moreover, the *Anders* brief must conform with CR 76.12 by including, *inter alia,* statements regarding whether the argument was preserved regardless of its lack of merit, a thorough recitation of the facts, a concise and well-reasoned analysis of the issues, and appropriate citations to the record and law. *See* CR 76.12(4). Further, appointed counsel must certify in the *Anders* brief that counsel provided the indigent parent with a copy of the brief and informed the parent that he or she has a right to file a *pro se* brief raising any issues the parent deems meritorious. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400.

Upon receiving counsel's motion to withdraw and accompanying *Anders* brief, this Court shall enter an order granting the indigent parent thirty days to file a *pro se* brief and deferring counsel's motion to withdraw to the merits panel. The order shall also grant the Cabinet thirty days from the due date of the parent's *pro se* brief to file its response. After all briefs are filed, this Court will fully examine the record and decide whether the appeal is wholly frivolous pursuant to *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. During the course of this review, this Court may, in its discretion, order either or both parties to file a supplemental brief addressing any issues this Court finds *may* have merit.

A decision to terminate parental rights is fact-intensive and requires strict appli-

**372**

cation of statutory standards. *P.C.C. v. C.M.C., Jr.*, 297 S.W.3d 590, 592 (Ky.App. 2009) ("In order to protect the rights of natural parents, Kentucky courts require strict compliance with statutory provisions governing the involuntary termination of parental rights."). Furthermore, the evidence to support terminating parental rights must be clear and convincing. KRS 625.090(1). Therefore, we urge restraint in filing *Anders* briefs. "The *Anders* brief is not a substitute for an advocate's brief on the merits." *McCoy v. Court of Appeals of Wisconsin, District 1*, 486 U.S. 429, 444, 108 S.Ct. 1895, 1904, 100 L.Ed.2d 440 (1988). Likewise, it is not an escape provision to end undercompensated, and sometimes uncompensated, legal services the lawyer agreed to provide.

### IV. *Application of Anders to the Case Sub Judice*

In accordance with the standard articulated above, we are obligated to independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal. *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400. We have reviewed the circuit court's (1) neglect and abuse determination; (2) finding of unfitness under KRS 625.090(2); and (3) best-interests determination. In light of our review, we agree with counsel's estimation and perceive no basis warranting relief on appeal.

In view of our consideration of this case under the standards of *Anders* and its progeny, the Cabinet's Motions to Dismiss and to Advance are moot.

### V. *Conclusion*

Based on the foregoing, the Kenton Family Court's January 11, 2011 order

terminating A.C.'s parental rights as to M.W.C. is affirmed.

ALL CONCUR.