RENDERED: JUNE 6, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1331-ME

K.S.M. AND L.E.M., JR.                                        APPELLANTS

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.       HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 24-AD-00043

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND A.D.M., A
MINOR CHILD                                                  APPELLEES

AND

NO. 2024-CA-1332-ME

K.S.M. AND L.E.M., JR.                                        APPELLANTS

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.       HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 24-AD-00044

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND N.E.M., A
MINOR CHILD                                                  APPELLEES

AND

NO. 2024-CA-1333-ME

K.S.M. AND L.E.M., JR.                                                          APPELLANTS

                                    APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                          HONORABLE DEANNA WISE HENSCHEL, JUDGE
                                    ACTION NO. 24-AD-00045

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND L.D.M., A
MINOR CHILD                                                                        APPELLEES

AND

NO. 2024-CA-1334-ME

K.S.M. AND L.E.M., JR.                                                          APPELLANTS

                                    APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                          HONORABLE DEANNA WISE HENSCHEL, JUDGE
                                    ACTION NO. 24-AD-00046

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND D.L.M., A
MINOR CHILD                                                                        APPELLEES

AND

NO. 2024-CA-1335-ME

K.S.M. AND L.E.M., JR.                                                    APPELLANTS


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 24-AD-00047


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND L.E.M., IV,
A MINOR CHILD                                                              APPELLEES

AND


NO. 2024-CA-1336-ME

K.S.M. AND L.E.M., JR.                                                    APPELLANTS


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 24-AD-00048


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND M.A.M.-E.,
A MINOR CHILD                                                              APPELLEES

OPINION

AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE: In this consolidated appeal, K.S.M. (Mother) and L.E.M., Jr. (Father)[1] appeal from six orders of the McCracken Circuit Court, Family Court Division terminating their parental rights as to their minor, biological children A.D.M., N.E.M., L.D.M., D.L.M., L.E.M. IV, and M.A.M..[2] Appellants' counsel have filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361(Ky. App. 2012), stating their belief that this appeal is frivolous. Based on *Anders* and *A.C.*, Appellants' counsel state that 1) no meritorious issues exist for appeal; 2) they have addressed any issues which arguably could be construed as meritorious; and 3) Appellants have been provided with a copy of the *Anders* brief and were given 30 days to filed a *pro se* brief. No *pro* se brief has been filed and Appellants' counsel have moved to withdraw as counsel. The Commonwealth of Kentucky, Cabinet for Health and Family Services (the Cabinet) agrees with the assessment of Appellants' counsel. After

---

[1] We will not use the names of the parties because this matter involves the termination of parental rights.

[2] M.A.M. has a hyphenated last name, which occasionally appears in the record at M.A.M-E.

-4-

careful review of the record and the law, we affirm the orders on appeal. We grant counsel's motion to withdraw by way of a separate order.

## FACTS AND PROCEDURAL HISTORY

This matter began on October 17, 2016, when the Cabinet filed dependency, neglect, and abuse (DNA) petitions as to Mother and Father's two oldest children. They were the parties' only children at the time. The petitions were based on allegations of physical abuse. On October 26, 2016, a temporary removal hearing was conducted and the Cabinet was granted temporary custody of the two children. An adjudication hearing was held on December 4, 2017, resulting in a finding that the two children were abused or neglected. A disposition hearing followed, with Mother and Father prosecuting an appeal to this Court and the Kentucky Supreme Court.

During the extended appellate process, Mother and Father had four more children. Each child was removed and placed in the temporary custody of the Cabinet while the appeal was pending.

On August 8, 2022, a second adjudication hearing was conducted, with the Cabinet also requesting that Mother and Father's parental rights be terminated as to all of the children. As a basis for the termination petition, the Cabinet alleged that Mother and Father had inflicted serious, life-threatening injuries on "Child L," which placed not only Child L but the other children at

serious risk. Evidence was adduced to support the petition, resulting in a finding that Mother and Father had inflicted, or allowed to be inflicted by other than accidental means, serious injuries as to Child L; that the parents had continuously failed to provide essential care; and, engaged in a pattern of conduct which made them incapable of caring for the immediate and ongoing needs of the children. Nevertheless, the circuit court denied the Cabinet's petition for termination, and gave them time to work out a case plan for reunification. It noted that the goal of reunification would change if the parents did not make progress on a case plan very quickly.

On June 27, 2023, another disposition hearing was conducted and all six children were committed to the Cabinet. The case was transferred to McCracken County, where Mother and Father were then residing. Because the matter was being transferred out of Calloway County, the parents were given additional time to work a case plan with a new worker. Mother and Father were also ordered to get a CATS[3] assessment.

The involuntary termination petition was tried in McCracken Circuit Court, Family Division on September 5, 2024, and September 12, 2024. Corey Birch testified on behalf of the University of Kentucky CATS program. He stated that the CATS evaluation is a comprehensive, team-oriented approach to assess a

---

[3] Comprehensive Assessment and Training Services program.

family dynamic. It utilizes parent interviews, child interviews, observation of parent-child interactions, examination of Department of Community Based Services (DCBS) records, psychometric testing, and parental-child relationship strengths and risk factors. Birch testified that the CATS program assessed Mother, Father, and the children for the purpose of determining if they could be safely reunited.

Birch stated that the basis for the removal of the children in the past was the near-fatal injuries sustained by Child L, which were attributed to one or both parents. He testified that in order for children to be returned to Mother and Father's custody, the parents would have to accept accountability for their actions; that the reasons as to how and why the injury occurred were meaningfully addressed; and, that the parents would need adequate interventions through services or therapies that would address the reason for the physical abuse. This could be through substance abuse treatment, mental health treatment, individual therapy, and anger management.

Birch went on to testify that Mother did not take any meaningful acceptance of the possibility that Child L's serious injuries could have been anything other than accidental. Birch noted that there was clear evidence through a court finding that Child L's injuries were intentional. Mother stated in the CATS evaluation that they were being "railroaded" and that Calloway County DCBS was

trafficking children. Birch stated that Father also did not accept that Child L's injuries were anything other than accidental. Birch went on to testify that Mother had significant childhood trauma which has never been addressed, and that Father appeared to be under the influence of marijuana at one encounter, in which he smelled of marijuana and had bloodshot eyes. Mother pled guilty to marijuana possession in 2023. Birch said that Mother's psychometric testing indicated that she was very defensive and that Father has difficulty concentrating.

Ultimately, Birch concluded that reunification of the children with Mother and Father would be inherently unsafe and dangerous because Child L suffered serious, if not life-threatening, injuries while in their care. According to Birch, Mother and Father have offered no rational explanation for the injuries other than intentional harm, and have failed to take any responsibility for what happened despite the passage of several years.

Additional witnesses also testified. Jennifer Camp, representing the Cabinet, stated that this matter commenced after Child L was brought to Murray-Calloway County hospital for respiratory distress, bruising over the right eye, and two subdural hematomas. She testified that Mother and Father have had the same case plan throughout and have not made sufficient progress for reunification. She said that they have never followed the recommendations and have not had significant individual therapy. Ms. Camp testified that the children are very

bonded to their foster family and are doing well there. Kelli Covington with the Cabinet echoed Ms. Camp's testimony. Ms. Covington stated that all six children remain in the same foster home together.

Mother also testified. While the circuit court found that she was a good advocate for herself, it noted that she does not think that she needs therapy. She also has not acknowledged Child L's physical abuse and stated that they have not paid child support. In addition, she is not interested in therapy. She stated that the children's foster mother loves them and is good to them. Finally, she does not have any concerns about the children's foster family situation.

After considering the testimony, the McCracken Family Court found by clear and convincing evidence that the children were abused or neglected. Citing Kentucky Revised Statutes (KRS) 600.020(1)(a), the court found that Mother and Father have inflicted or allowed to be inflicted upon the child physical or emotional injury; have continuously or repeatedly failed or refused to provide essential parental care and protection for the children, considering the age of the children; did not provide the children with adequate care, supervision, food, clothing, shelter, education or medical care necessary for the child's wellbeing pursuant to KRS 600.020(1)(a)8. and KRS 600 020(1)(a)9.; and, failed to make sufficient progress on the court-approved case plan to allow for the safe return of the children to the parent that resulted in the children remaining committed to the

Cabinet and remaining in foster care for fifteen (15) cumulative months out of forty eight (48) months.

The McCracken Family Court found that the Calloway Family Court "granted them a HUGE gift" (emphasis in original) after the adjudication in August 2022, by not terminating their parental rights and giving them yet another opportunity to work their case plan, get therapy, and invest in their children. From August 2022 to the date of termination, Mother only attended two therapy sessions and Father only one. The court noted that the two older children had been in foster care for 8 years, and the four youngest children have been in foster care since birth. It believed that they needed stability and permanency. Because the children would be at significant risk if returned to their parents, and as there was no reasonable prospect of improvement after 8 years, the court terminated Mother and Father's parental rights as to all 6 children. This appeal followed.

## ANALYSIS

The standard for review in termination of parental rights cases is set forth in *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116-17 (Ky. App. 1998). Therein, it is established that this Court's standard of review in a termination of parental rights case is the clearly erroneous standard found in Kentucky Rules of Civil Procedure (CR) 52.01, which is based upon clear and convincing evidence. Hence, this Court's review is to determine whether the trial court's order was supported by substantial evidence on the record. And the Court will not disturb the trial court's findings unless no substantial evidence exists on the record.

-10-

Furthermore, although termination of parental rights is not a criminal matter, it encroaches on the parent's constitutional right to parent his or her child, and therefore, is a procedure that should only be employed when the statutory mandates are clearly met. While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution. It is a very serious matter.

*M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846, 850 (Ky. App. 2008) (citations omitted).

The standard of proof before the trial court necessary for the termination of parental rights is clear and convincing evidence. "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people."

*V.S. v. Commonwealth, Cabinet for Human Resources*, 706 S.W.2d 420, 423-24 (Ky. App. 1986) (citations omitted).

Mother and Father's counsel filed an *Anders* brief in compliance with *A.C.*, *supra.* In *A.C.*, this Court adopted and applied the procedures identified in *Anders*, *supra*, regarding appeals from orders terminating parental rights where counsel cannot identify any nonfrivolous grounds to appeal. *A.C.*, 362 S.W.3d at 371. Those procedures require counsel to first engage in a thorough and good faith review of the record. *Id.* "[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and

-11-

request permission to withdraw." *Id.* at 364 (quoting *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400).

Mother and Father's counsel complied with the requirements of *A.C.* and *Anders* by providing Mother and Father with a copy of the brief and informing them of their right to file *pro se* briefs raising any issues they found meritorious. *A.C.*, 362 S.W.3d at 371. Neither Mother nor Father filed a *pro se* brief. Per *A.C.*, we have closely examined the record and the law, and agree with Appellants' counsel and the Cabinet that no grounds exist that would warrant disturbing the circuit court's order terminating Mother and Father's parental rights.

KRS 625.090 sets forth the requirements which must be met before a circuit court may involuntarily terminate parental rights.[4] First, the court must determine that the child is abused or neglected or that the child was previously determined to be abused or neglected by a court of competent jurisdiction. KRS 625.090(1)(a). Second, a petition seeking the termination of parental rights must have been filed by the Cabinet pursuant to KRS 620.180 or KRS 625.050. KRS 625.090(1)(b)1. Third, the circuit court must find that termination is in the best interests of the child. KRS 625.090(1)(c). Finally, the court must find by clear and convincing evidence the existence of one or more of the eleven grounds, (a) through (k), set out in KRS 625.090(2).

---

[4] KRS 625.090 was amended by 2025 Kentucky Laws Ch. 26 (SB 26).

In the matter before us, each of the statutory requirements were met, and we will not disturb the findings of the circuit court because they are supported by substantial evidence. *M.E.C.*, *supra.* That substantial evidence includes proof that Child L received serious, life-threatening injuries; that the child was in the custody and control of Mother and Father when the injuries were sustained; and, that no credible evidence was adduced that the injuries were accidental. Further, Mother and Father have consistently refused to accept responsibility for their actions, and have not made serious efforts to seek reunification, to engage in therapy, nor to complete their case plans in over eight years.

## CONCLUSION

The circuit court's findings are amply supported by the record, and the KRS 625.090 requirements for involuntary termination of parental rights were met. No nonfrivolous grounds for appeal are found in the record. For these reasons, and with due regard to the serious consequences of involuntary termination on both the parents and the children, we find no error and affirm the orders of the McCracken Family Court.


ALL CONCUR.

BRIEF FOR APPELLANTS:

Ashley Wiggins White
Calvert City, Kentucky

Kristen S. Simpson
Paducah, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Dilissa G. Milburn
Mayfield, Kentucky