RENDERED: FEBRUARY 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1008-ME

T.W.R.F.                                                         APPELLANT

v.                   APPEAL FROM MARSHALL CIRCUIT COURT
                     HONORABLE STEPHANIE J. PERLOW, JUDGE
                     ACTION NO. 25-AD-00001

B.J.J.; COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY SERVICES;
AND D.W.A.F., A MINOR CHILD                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

THOMPSON, CHIEF JUDGE:  T.W.R.F.[1] (Appellant) appeals from an order of

the Marshall Circuit Court, Family Court Division terminating his parental rights

as to his minor child, D.W.A.F. (Child).  Appellant's counsel, Hon. Rebecca

---

[1] We will use the parties' initials because a minor child is involved.

Reynolds, filed an *Anders*[2] brief stating her belief that there are no non-frivolous grounds for appeal; addressing any issues which arguably could be construed as meritorious; and, providing Appellant with the opportunity to file a *pro se* brief. Appellant has not filed a *pro se* brief. After a thorough review of the record and the law, we affirm the order terminating Appellant's parental rights.[3]

## FACTS AND PROCEDURAL HISTORY

Appellant is the biological father of Child, who was born on July 21, 2020. In 2021, the Commonwealth of Kentucky, Cabinet for Health and Family Services (the Cabinet) instituted an action resulting in Child's placement in foster care from January 25, 2022, through June 17, 2022, and April 11, 2023, through entry of the judgment which forms the basis for this appeal. On July 11, 2023, the Marshall Family Court entered an order adjudicating Child as abused or neglected pursuant to Kentucky Revised Statutes (KRS) 600.020(1), with Child's father, Appellant, as the responsible party. The basis of the placement and adjudication of abuse or neglect was Appellant's failure or inability to care for Child due to Appellant's drug and alcohol use.

---

[2] *Anders v. State of California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). *See also A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361, 361 (Ky. App. 2012).

[3] We have granted counsel's motion to withdraw from representation by way of a separate order.

On January 21, 2025, the Cabinet filed a petition pursuant to KRS 625.050 to involuntarily terminate the parental rights of Appellant and B.J.J. (Mother) as to Child. A guardian ad litem was appointed, and Mother, through counsel, voluntarily terminated her parental rights as to Child.

The family court tried the matter without a jury on July 25, 2025. At trial, Marty Cobb, Program Administrator for West Kentucky Drug and Alcohol, testified first. Mr. Cobb assessed Appellant for their Batterer's Intervention and Drug and Alcohol program. Cobb testified that he recommended Appellant for treatment based on Appellant's scores for domestic violence and drug abuse. Mr. Cobb referred Appellant for 28 classes and would allow him to do two programs at once to save money. According to Cobb, Appellant never attended any of the classes and Cobb never heard from Appellant again after that.

Also testifying was Ryker Wilson, a clinical social worker employed at Emerald Therapy Center. Mr. Wilson testified that he enrolled Appellant in parenting classes and Appellant was provided with materials he was supposed to bring to class. Appellant was later discharged from the program for failure to attend. Mr. Wilson further testified that Appellant was also enrolled in an Intensive Outpatient Treatment program at Emerald Therapy Center, but was again discharged for failing to attend treatment.

Brandi Vickers is a social worker with the Cabinet who next testified. She became involved with the family in December, 2021, and referred them for services. She reiterated that Appellant failed to attend his batterer's assessment program at West Kentucky Drug and Alcohol, during which time Appellant stated that he did not have transportation, lacked money, and forgot to attend the program. She recounted that in February, 2023, Appellant was arrested for methamphetamine use, and Child was placed with his mother. Due to domestic violence concerns, Child was then placed in the emergency custody of the Cabinet. She stated that on March 26, 2023, Appellant was arrested for domestic violence, at which time Mother tested positive for THC. The Cabinet again sought custody, with the family court finding that there was reasonable cause to believe that Child was neglected based on domestic violence issues, substance abuse issues, criminal activity, and mental health issues.

Ms. Vickers testified that at the Adjudication Hearing on July 11, 2023, Appellant stipulated to neglect based on his substance abuse issues and criminal activity involving Child that affected his ability to parent. The child was committed to the Cabinet at the Disposition Hearing on August 11, 2023. She stated that Appellant was ordered to complete a variety of compliance tasks including substance abuse assessment, demonstrating knowledge and skills to maintain sobriety, completing random drug and alcohol screens, and a variety of

assessments and programs. Ms. Vickers testified that Appellant would take assessments, but was discharged from every program for non-compliance. Ms. Vickers testified that every one of Appellant's drug screen showed drug use. Due to Appellant's substance abuse and domestic violence issues, Ms. Vickers feared for Child's safety if he were returned to his parents.

Ms. Vickers also testified that Appellant has not provided any essentials of life for Child since Child has been in foster care; that Child is thriving in foster care, and there are no concerns about his care or wellbeing; that she had to discontinue her involvement in the case in March, 2025, after Appellant threatened her; and, that the Cabinet recommended the termination of Appellant's parental rights. Teddie Radcliffe, also with the Cabinet, provided similar testimony.

Lastly, Appellant testified that both Ms. Vickers and the Family Court judge told him that it did not matter if he smoked marijuana. He also claimed that he doesn't know why he tested positive for methamphetamine. He stated that his attorney advised him not to complete his case plan, and that he just needed six more months to get everything in order.

After hearing the testimony, the Family Court found the Cabinet's testimony persuasive. It also determined that Appellant was not a credible witness. It noted that Appellant had previously stipulated to drug abuse issues, while later

testifying that he had no drug abuse issues. The court summarized its findings of fact as follows:

> The Respondent Father has had a case plan with the Cabinet for almost two (2) years. Despite numerous case plans and interventions, the Respondent Father has simply not worked a case plan for the successful reunification of his child. He has not done ANY individual therapy, domestic violence therapy, or substance abuse therapy. He has not done parenting classes. He has not had one single negative drug screen. He has not done one item on his case plan other than housing. It is time to put the permanency needs of this child first.

The Family Court then applied the relevant factors set out in KRS Chapter 600 to conclude that Child had previously been adjudicated as abused or neglected; that Appellant continuously or repeatedly failed or refused to provide essential parental care and protection for the child, considering the age of the child; that Appellant did not provide the child with adequate care, supervision, food, clothing, shelter, education, or medical care necessary for the child's wellbeing; and, that Appellant failed to make sufficient progress on the court approved case plan to allow for the safe return of the child to the parent that resulted in the child remaining committed to the Cabinet and remaining in foster care for fifteen (15) cumulative months out of forty eight (48) months. The court went on to find that the Cabinet made reasonable efforts to reunite Child with Appellant, and that termination was in Child's best interest. It entered a judgment terminating

Appellant's parental rights in conformity with these findings of fact and

conclusions of law.  This appeal followed.

## ANALYSIS

> The standard for review in termination of parental rights cases is set forth in *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116-17 (Ky. App. 1998). Therein, it is established that this Court's standard of review in a termination of parental rights case is the clearly erroneous standard found in Kentucky Rules of Civil Procedure (CR) 52.01, which is based upon clear and convincing evidence.  Hence, this Court's review is to determine whether the trial court's order was supported by substantial evidence on the record.  And the Court will not disturb the trial court's findings unless no substantial evidence exists on the record.
>
> Furthermore, although termination of parental rights is not a criminal matter, it encroaches on the parent's constitutional right to parent his or her child, and therefore, is a procedure that should only be employed when the statutory mandates are clearly met.  While the state has a compelling interest to protect its youngest citizens, state intervention into the family with the result of permanently severing the relationship between parent and child must be done with utmost caution.  It is a very serious matter.

*M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d

846, 850 (Ky. App. 2008) (citations omitted).

> The standard of proof before the trial court necessary for the termination of parental rights is clear and convincing evidence.  "Clear and convincing proof does not necessarily mean uncontradicted proof.  It is sufficient if there is proof of a probative and substantial

> nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people."

*V.S. v. Commonwealth, Cabinet for Human Resources*, 706 S.W.2d 420, 423-24 (Ky. App. 1986) (citations omitted).

Appellant's counsel filed an *Anders* brief per *A.C.*, *supra.* In *A.C.*, this Court adopted and applied the procedures identified in *Anders*, *supra*, regarding appeals from orders terminating parental rights where counsel cannot identify any nonfrivolous grounds to appeal. *A.C.*, 362 S.W.3d at 371. Those procedures require counsel to first engage in a thorough and good faith review of the record. *Id.* "[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." *Id.* at 364 (quoting *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400).

Appellant's counsel also complied with the requirements of *A.C.* and *Anders* by providing Appellant with a copy of the brief, and informing him of his right to file a *pro se* brief raising any issues he found meritorious. *A.C.*, 362 S.W.3d at 371. As noted above, Appellant did not file a *pro se* brief.

KRS 625.090 sets forth the requirements which must be met before a circuit court may involuntarily terminate parental rights.[4] First, the court must

---

[4] KRS 625.090 was amended by 2025 Kentucky Laws Ch. 26 (SB 26).

determine that the child is abused or neglected or that the child was previously determine to be abused or neglected by a court of competent jurisdiction. KRS 625.090(1)(a). Second, a petition seeking the termination of parental rights must have been filed by the Cabinet pursuant to KRS 620.180 or KRS 625.050. KRS 625.090(1)(b)1. Third, the circuit court must find that termination is in the best interests of the child. KRS 625.090(1)(c). Finally, the court must find by clear and convincing evidence the existence of one or more of the eleven grounds, (a) through (k), set out in KRS 625.090(2).

In the matter before us, each of the statutory requirements were met, and we will not disturb the findings of the circuit court because they are supported by substantial evidence. *M.L.C.*, *supra.* The Family Court correctly found that Child was previously determined to be abused or neglected (KRS 625.090(1)(a)); that the Cabinet filed a petition seeking termination of parental rights (KRS 625.090(1)(b)1.); that termination was in Child's best interest (KRS 625.090(1)(c)); and, that one or more of the eleven grounds were shown by clear and convincing evidence (KRS 625.090(2)).

## CONCLUSION

The Marshall Family Court's findings are amply supported by the record, and the KRS 625.090 requirements for involuntary termination of parental rights were met. For the reasons previously discussed, and with due regard to the

serious consequences of involuntary termination of parental rights on both Appellant and Child, we find no error and affirm the orders of the Marshall Family Court.

ALL CONCUR.

| *ANDERS* BRIEF FOR APPELLANT: | BRIEF FOR COMMONWEALTH OF KENTUCKY, CABINET FOR HEALTH AND FAMILY SERVICES: |
|---|---|
| Rebecca Reynolds Murray, Kentucky | |
| | Kevin Martz |
| NO SUPPLEMENTAL BRIEF FOR APPELLANT. | Covington, Kentucky |