RENDERED: FEBRUARY 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0524-ME

C.G.                                                                                    APPELLANT


                              APPEAL FROM GREENUP CIRCUIT COURT
v.                      HONORABLE JEFFREY L. PRESTON, JUDGE
                              ACTION NO. 23-AD-00018


CABINET FOR HEALTH AND
FAMILY SERVICES; J.A.; AND
K.E.G., A CHILD                                                      APPELLEES

AND

NO. 2024-CA-0525-ME

C.G.                                                                                    APPELLANT


                              APPEAL FROM GREENUP CIRCUIT COURT
v.                      HONORABLE JEFFREY L. PRESTON, JUDGE
                              ACTION NO. 23-AD-00019


CABINET FOR HEALTH AND
FAMILY SERVICES; J.A.; AND
K.S.G., A CHILD                                                      APPELLEES

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND TAYLOR, JUDGES.

ECKERLE, JUDGE:  Appellant, C.G. ("Father"), seeks review of the Greenup

Circuit Court's Orders Terminating Parental Rights and Order of Judgment as to

his two biological children.  In accordance with *A.C. v. Cabinet for Health and*

*Family Services*, 362 S.W.3d 361 (Ky. App. 2012), Father's appointed counsel has

moved to withdraw and has filed briefs pursuant to *Anders v. California*, 386 U.S.

738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).  This Court, having conducted a

thorough review of the record on appeal, hereby affirms the Family Court's Orders

terminating Father's parental rights.  We also hereby grant the motion of Father's

counsel to withdraw.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and J.A. ("Mother") are the biological parents of twin girls,

K.E.G. and K.S.G., both born in Missouri in November of 2012 (collectively, the

"Children").  While in Missouri, Children were removed from Mother and Father's

care.  In 2019, Father obtained custody of Children.  In December of 2020, Father

and Children moved to Kentucky.  Both Children suffer from developmental

disabilities and have special needs.  In January of 2021, Father was charged and

-2-

arrested for committing two counts of Assault-Child Abuse in the Fourth Degree due to bruising found on critical parts of Children's bodies.[1] Law enforcement notified the Appellee, Commonwealth of Kentucky, Cabinet for Health and Family Services (the "Cabinet"), who in turn obtained emergency custody of Children on January 13, 2021, and commenced separate Dependency/Neglect/Abuse actions on Children's behalf (the "DNA Actions") in the Family Court.

The Family Court extended the Cabinet's custody and placement of Children in a state-approved, foster home following temporary removal hearings. Father was not initially allowed visitation with Children as a condition of his bond agreement in the criminal abuse case. However, Father executed a case plan with the Cabinet to facilitate reunification. Among other tasks, the Cabinet required Father to complete a parenting assessment and mental health assessment. The case plan also required Father to complete parenting and anger management classes.

In October of 2021, Father gained weekly supervised visitation with Children. Initially, Father was also permitted to attend all of Children's medical appointments. However, due to Father's hostile behavior, Father was later disallowed from accompanying Children to a specific provider. In January of 2022, Licensed Clinical Psychologist, Dr. Paul A. Ebben, conducted Father's

---

[1] Father ultimately pleaded guilty to Disorderly Conduct.

mental health examination, including a parental competency evaluation and risk assessment. As will be discussed in more detail, the results of Dr. Ebben's examination categorized Father as having a high risk of future abuse or maltreatment of Children. Consequently, the Cabinet requested the Family Court's approval to change Children's permanency goal to adoption. The Family Court subsequently approved this plan with instructions for Father to continue concurrently working with the Cabinet.

In February of 2023, Father finished his case plan, satisfying the required anger management and parenting classes. Father also complied with the Cabinet's request that he attend therapy to gain, among other objectives, specialized parenting skills. Despite these services, Father displayed aggressive behaviors towards Children during supervised visits and towards Cabinet workers. Consequently, on March 14, 2023, the Family Court issued a Permanency Order identifying the permanency goal as adoption due to Father's behaviors, with there being no likelihood of improvement.

On May 18, 2023, the Cabinet filed petitions to terminate involuntarily Father's parental rights to Children.[2] The Family Court conducted

---

[2] The Cabinet's petitions also sought involuntary termination of Mother's parental rights. On August 14, 2023, Mother executed an appearance waiver and adoption consent as to both Children. On March 18, 2024, the Family Court accepted Mother's adoption consent as having been given freely, intelligently, and voluntarily. As such, the Family Court terminated Mother's parental rights to Children in the subject Orders Terminating Parental Rights and Order of Judgment. Mother's voluntary termination is not at issue in the instant appeal.

termination hearings on January 17, 2024, and March 6, 2024. The Cabinet and Guardian *ad Litem*, as well as Father with the assistance of counsel, were present at the hearings. The Family Court also heard testimony from several witnesses, including Dr. Ebben, the Cabinet's investigator and case manager, Father, the paternal grandmother, the foster care visitation supervisor, and Father's parenting class instructor. The Family Court also accepted numerous exhibits into the record, including, but not limited to, Dr. Ebben's parental assessment of Father and records from the DNA Actions.

On March 18, 2024, the Family Court issued separate orders terminating Father's parental rights to Children, both of which were titled "Order Terminating Parental Rights and Order of Judgment." The Family Court also summarily entered separate, but virtually identical, Findings of Fact and Conclusions of Law. The Family Court's factual findings spanned more than eight pages. Ultimately, the Family Court found clear and convincing evidence that Children were abused or neglected pursuant to Kentucky Revised Statutes ("KRS") 625.090(1)(a); that termination of Father's parental rights was in Children's best interests; and that several grounds for termination as enumerated in KRS 625.090(2) existed. The Family Court also placed Children's full care, custody, and control with the Cabinet along with the authority for the Cabinet to place Children into adoption. On April 3, 2024, the Family Court denied Father's

Motions to Alter, Amend, or Vacate. On April 17, 2024, appointed counsel for Father filed separate notices of appeal from the Family Court's Orders.

On July 1, 2024, Father's appointed counsel filed motions for leave to withdraw as counsel and tendered *Anders* briefs stating that no meritorious assignment of error exists in either appeal. By Orders entered on July 18, 2024, this Court's motion panel accepted counsel's *Anders* briefs, permitted Father to proceed *pro se* and file a supplemental brief within 30 days, and passed counsel's motion to withdraw to this merits panel for consideration on its own. Father did not file supplemental briefs in either appeal. On October 8, 2024, by motion of the Cabinet, this Court consolidated Father's appeals.

## STANDARD OF REVIEW

The termination of parental rights involves a fundamental liberty interest, thereby subjecting a family court's statutory findings to a clearly erroneous standard of review. *Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014). Therefore, this Court will not set aside a trial court's findings unless unsupported by substantial evidence, giving due regard to the ability of the family court to evaluate the credibility of witnesses and to judge the weight of the evidence. *Cabinet for Health & Fam. Servs. v. K.S.*, 585 S.W.3d 202, 209 (Ky. 2019) (quoting *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 117 (Ky. App. 1998)); Kentucky Rules of Civil Procedure ("CR") 52.01.

When the "facts are not seriously disputed[,]" the "appellate courts are disinclined to disturb trial-court findings[.]" *R.M. v. Cabinet for Health & Fam. Servs.*, 620 S.W.3d 32, 38 (Ky. 2021) (footnotes and citations omitted). Moreover, appellate review of the decision to terminate parental rights under the clear error standard affords great deference to a family court's findings and permits a family court "wide discretion in terminating parental rights." *K.H.*, 423 S.W.3d at 211.

In addition, since Father's counsel submitted *Anders* briefs advising the Court that both appeals lack meritorious grounds for relief, we must conduct an independent review of the record to determine whether Father's consolidated appeal is, in fact, frivolous. *See A.C.*, 362 S.W.3d at 371.

## ANALYSIS

Involuntary termination of parental rights is governed by KRS 625.090, which authorizes a court to terminate a parent's rights involuntarily where the following requirements are met by clear and convincing evidence: (1) the child is abused or neglected or has been previously adjudicated as abused or neglected as defined in KRS 600.020(1)(a); (2) the Cabinet filed a petition seeking the termination of parental rights pursuant to KRS 620.180 or 625.050;[3] (3) the

---

[3] The Cabinet filed petitions for the involuntary termination of Father's parental rights to Children as authorized by KRS 625.050, thereby satisfying the statutory requirement delineated in KRS 625.090(1)(b).

termination of parental rights is in the child's best interests as delineated in KRS 625.090(1)(c); and (4) at least one of the enumerated termination grounds of KRS 625.090(2)(a)-(k) exists. Even in circumstances where the aforementioned, statutory requirements are met, a family court still maintains the discretion to decline termination of the parent's rights if it finds, by a preponderance of the evidence, that the child would no longer suffer abuse or neglect if returned to the parent's care. KRS 625.090(5).

As discussed below, our independent review of the record reveals that the Family Court's findings are supported by clear and convincing evidence. Considering that the Family Court complied with the relevant statutory mandates for involuntary termination of Father's parental rights, we find no reason to disturb its Orders. This Court likewise agrees with the contention of Father's counsel that there is no meritorious basis for relief and this consolidated appeal is wholly frivolous.

A. *Evidence of Neglect or Abuse*

This Court's review of the record demonstrates there is substantial evidence to support the Family Court's finding that the Children were abused or neglected as required by KRS 625.090(1)(a). The Family Court based its conclusion on Father's stipulation to neglect in the underlying DNA Actions. In

addition, the Family Court found that Father's conduct satisfied the abuse and neglect definition pursuant to KRS 600.020(1)(a)8. and 9.

KRS 600.020(1)(a)8. defines abuse or neglect as occurring when the subject child is not provided "with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being when [the parent is] financially able to do so or offered financial or other means to do so." In review of the record, this Court finds sufficient evidence of Father's abuse or neglect of Children based on subsection 8. Father's child-support arrearages exceeded $6,600.00 at the time of termination. Furthermore, we can find no proof that Father financially supported the Children in any manner following their removal despite having the ability to do so. Evidence demonstrating that Father moved four times throughout the pendency of the case, including relocations to Greenup, Floyd, Pike, and Boyd Counties, is sufficient proof of his inability to provide stable, consistent shelter necessary for Children's well-being. Finally, ample evidence demonstrates Children's complex needs associated with their developmental delays. At no point did Father initiate medical care to address these needs, which is clearly requisite for Children's well-being.

In relation to subsection 9., the Family Court found that Children were abused or neglected based on Father's failure "to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe

return of the [Children] to [Father] that result[ed] in the [Children] remaining committed to the cabinet and remaining in foster care for fifteen (15) cumulative months out of forty-eight (48) months[.]" We find abundant evidence to support the Family Court's conclusion. First, there is sufficient evidence that Father did not make adequate advancement in meeting the case plan objectives and goals. The case plans included parenting and anger management classes, along with therapy to develop individualized parenting skills. Despite these services, Father was unable to demonstrate skills to improve his parenting deficits and abate his aggressive behaviors towards Children and others. These goals are of critical importance because, as Dr. Ebben testified, Children are at heightened risk of abuse based on not only their disabilities, but also Father's maladaptive ability to deal with the stressors associated with parenting children with special needs.

Indeed, this Court's review of the record shows that Father was unable to conform his behavior to even the minimal standards necessary to obtain unsupervised visits with Children. Father exhibited aggressive behaviors towards Children and others, including, but not limited to, threatening the assigned social worker, angry and inappropriate behavior when attending Children's medical appointments, and Father's continued frustration with, and mistreatment of, Children during supervised visits. Not only did Father display rough handling of Children during visitations, but he also admitted to spanking Children during one

supervised visit. A progress report also stated that during a supervised visit, Father was seen "jerking" Children's arms while threatening to "bust their ass" when Children did not meet Father's demands. In fact, the Cabinet was so concerned with Father's behavior, it stopped permitting Father to walk Children from the visitation building to the foster parent's waiting vehicle. This modification arose from observations of Father's harsh and unsafe handling of Children in prior attempts to perform an otherwise elementary, caregiver task. During his own testimony, Father took no accountability for his prior behaviors, minimized his hostile actions towards Children, failed to acknowledge Children's disabilities, and demonstrated a lack of understanding of Children's needs.

In summary, based on our independent review of the record, there is clear and convincing evidence of the following: (1) Father stipulated to the abuse of Children in the DNA Actions; (2) Father failed to provide Children with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for Children's well-being when financially able to do so; and (3) Father failed to make sufficient progress in meeting the case plan goals resulting in Children's remaining in foster care for over three years, far exceeding the threshold commitment time of 15 cumulative months out of the previous 48 months. Accordingly, we find no error in the Family Court's conclusion that Children were abused or neglected or have been previously adjudicated as abused or neglected.

B. *Children's Best Interests*

Pursuant to KRS 625.090(1)(c), the Family Court conducted a best interest analysis, ultimately concluding that the termination of Father's parental rights would be in Children's best interest.

KRS 625.090(3) mandates consideration of the following factors when assessing a child's best interest:

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
>
> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
>
> (c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;
>
> (d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;
>
> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

We find sufficient evidence to support the Family Court's conclusion. As to subsection (a), there is no proof, other than Father's self-reported mental health history, that he suffers from a mental illness or intellectual disability. Regarding subsection (b), this Court has already found clear and convincing evidence of Father's abuse and neglect of Children. Moreover, there is sufficient proof supporting the Family Court's finding that in 2012, Father was indicted in Missouri for felony abuse of a child and endangering the welfare of a minor after punching Children's two-year-old sibling in the face. Father ultimately pleaded guilty and served time in prison in accordance with the resulting sentence.

Concerning subsections (c) and (d), there is substantial evidence that the Cabinet made reasonable efforts to reunite Father with Children, yet Father failed to modify his conduct and improve his living situation to make it in Children's best interest to return to his care within a reasonable time. In addition to the evidence already discussed *supra*, we highlight Dr. Ebben's testimony regarding Father's parental assessment and parenting ability. Dr. Ebben described Father as having a poor capacity to parent safely. Dr. Ebben also opined that Father is unable to provide minimally acceptable care for the special needs of Children, and that there is a high risk of Father causing future maltreatment of

-13-

Children. Accordingly, we agree with Family Court's determination that Father's risk factors, such as the increased burden of Children's special needs, along with Father's lack of understanding of said needs and inability to cope with the stress of those needs, weighs in favor of termination of Father's parental rights.

Our review of the evidence also demonstrates substantial support for the Family Court's finding as it relates to subsection (e). The Cabinet's testimony established that since removal from Father's care, Children have shown vast improvement in their physical and mental well-bring. For example, evidence shows that since entering foster care, Children have been evaluated and received medical diagnoses. Children now receive medication, speech and occupational therapy, and special education at school. Children have gained weight and have overcome the malnourished condition sustained in Father's care. Based on Children's physical and mental health improvements, coupled with Father's failure to address Children's needs in any meaningful way (such as seeking early intervention prior to their removal), we find clear evidence that Children's physical, emotional, and mental health will continue to improve by the termination of Father's parental rights. We also note that evidence of Father's transient lifestyle weighs against Children's interest, as the likelihood they would continue to receive future, consistent medical treatment and services if placed with Father is low. With respect to subsection (f), and as also discussed herein, there is

-14-

substantial evidence that Father has failed to pay a reasonable portion of Children's care despite being financially able to do so.

In light of our independent review of the record, and having weighed the factors outlined in KRS 625.090(3), we agree with the Family Court that clear and convincing evidence demonstrates that the termination of Father's parental rights is in Children's best interest.

C. *KRS 625.090(2)(a)-(k) Grounds for Involuntary Termination of Father's Parental Rights*

In its Findings of Fact and Conclusions of Law, the Family Court found the existence of three grounds for termination as enumerated in KRS 625.090(e), (g), and (j). Following this Court's review of the record, we find clear and convincing evidence to support the Family Court's conclusion.

Evidence satisfying subsection (e) is found in Father's continuous failure to provide Children with essential parental care and protection, with there being no reasonable expectation of improvement. Again, Dr. Ebben's testimony, Father's parental capacity assessment, and Father's own testimony reveal that his parenting capacity is inadequate. Despite Father receiving the Cabinet's services designed to aid him in providing Children with acceptable parental care and protection, Father was unsuccessful in making necessary adjustments to become a safe and stable caregiver. To this point, Father's testimony and Dr. Ebben's report prove that Father has failed to acknowledge Children's special needs or

demonstrate that he is capable of reasonably improving his parenting ability to abate the high risk of future abuse or neglect.

Likewise, we also find clear and convincing evidence satisfying the termination ground listed in subsection (g). As we have already discussed, Father has continuously or repeatedly failed to provide essential food, clothing, shelter, medical care, or education reasonably necessary and available for Children's well-being and that there is no reasonable expectation of significant improvement in the immediately foreseeable future. Substantial evidence supporting this conclusion is detailed throughout this Opinion, including Father's failure to pay child support, obtain stable and consistent housing, provide Children with medical care, and unwillingness to acknowledge Children's special needs and obtain the skills required to meet those needs.

Finally, we find clear and convincing evidence satisfying the termination ground espoused in subsection (j). As already established, Children have been in foster care under the responsibility of the Cabinet for 15 cumulative months out of 48 months preceding the Cabinet's filing of the petition to terminate Father's parental rights.

## CONCLUSION

Based on the forgoing analysis, we affirm the Greenup Circuit Court's Findings of Fact, Conclusions of Law, and Orders Terminating Father's Parental Rights and Order of Judgment as to K.E.G. and K.S.G.

IT IS FURTHER ORDERED that, pursuant to *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012), the motion of appointed counsel, Natasha L. Kinnan, to withdraw as Father's counsel is hereby GRANTED.

ALL CONCUR.

ENTERED: _____    _____
                                                        JUDGE, COURT OF APPEALS

BRIEF FOR APPELLANT:

Natasha L. Kinnan
Catlettsburg, Kentucky

BRIEF FOR APPELLEE:

Dilissa G. Milburn
Mayfield, Kentucky