RENDERED:  JANUARY 31, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0508-ME


M.N.W.                                                                APPELLANT


v.          APPEAL FROM CHRISTIAN FAMILY COURT
            HONORABLE KATHERINE DEMPS, JUDGE
            ACTION NO. 23-AD-00037


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; M.K.W., A
CHILD; AND UNKNOWN FATHER                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE:  M.N.W. ("Mother") appeals from the involuntary

termination of her parental rights to M.K.W. ("Child").[1]  We affirm.

---

[1] To protect the minor child's privacy and pursuant to court practice, we do not refer to the child or the natural parents by name.  *See also* Kentucky Rules of Appellate Procedure ("RAP") 5(B)(2).

**FACTS**

Child was born in the fall of 2019. In October 2021, the Cabinet for Health and Family Services ("the Cabinet") filed a dependency, neglect, and abuse ("DNA") petition with a social worker's affidavit. The social worker averred Child was placed with relatives in a safety plan after Mother was arrested. She also averred Mother had been threatening the social worker and caregivers.

The family court granted the Cabinet emergency custody of Child and ordered Mother to pay child support. Child was placed with a foster family in late October 2021 and has remained in the foster family's home since then.

In January 2022, the family court adjudicated Child to be an abused or neglected child and placed him in the temporary custody of the Cabinet. In May 2022, following a disposition hearing, Child was committed to the Cabinet.

The family court ordered Mother to undergo drug testing. It also found her indigent and ordered the Cabinet to pay for services. Court review notes and Cabinet reports in the DNA case record indicate Mother was required to undergo substance abuse and mental health assessments, obtain mental health treatment, and attend parenting classes.

In December 2022, the family court entered a permanency order reflecting concurrent goals of both reunification and termination of parental rights/adoption. Following review in June 2023, the family court's notes state the

Cabinet reported Mother had not fully complied with her case plan requirements and the Cabinet planned to seek termination of parental rights ("TPR"), but Mother could continue to work her case plan.

In early September 2023, the Cabinet filed the TPR petition. The case proceeded to trial in February 2024. The family court entered an order terminating Mother's parental rights and supporting findings of fact and conclusions of law in March 2024. Mother filed a timely appeal.

Mother's counsel filed an *Anders* brief,[2] indicating she perceived no meritorious grounds for appeal, along with a motion to withdraw. Mother's counsel certified that she sent copies of the *Anders* brief and the motion to withdraw to Mother at her last known address, along with a letter advising Mother of her right to file a *pro se* brief.[3] This Court entered an order passing Mother's counsel's motion to the merits and giving Mother 30 days to file a supplemental *pro se* brief if she so desired. Mother did not file a supplemental brief.

Upon review, we grant Mother's counsel's motion to withdraw by separate order and affirm the family court's termination of Mother's parental rights. Further facts will be provided as necessary in our analysis.

---

[2] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[3] Mother's counsel noted Mother would not confirm via text message that the address was her current address, but that counsel would attempt to advise her over the phone.

## ANALYSIS

## *Anders* Brief Considerations

We set forth the procedure for considering *Anders* briefs in Kentucky involuntary termination of parental rights cases in *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361, 371 (Ky. App. 2012).

If counsel concludes there are no proper grounds for appellate relief from an involuntary termination of parental rights, counsel must nonetheless submit a brief "'referring to anything in the record that might arguably support the appeal.'" *Id.* (quoting *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400). Other than noting the family court's finding that Mother did provide some snacks and gifts of clothing to Child at visits, the *Anders* brief does not refer to anything in the record that might arguably support the appeal. Nonetheless, we "are obligated to independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372 (citing *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400).

Such review is analogous to a palpable error review, requiring only that we ascertain whether any error affects the substantial rights of a party. *A.C.*, 362 S.W.3d at 370. If such a review results in the Court's agreement with an appellant's counsel that there is no nonfrivolous ground for appealing the termination of parental rights, it is appropriate to affirm the family court.

-4-

Nonetheless, in considering the family court's decision upon our independent review of the record, we keep in mind statutory requirements for granting a petition for involuntary termination of parental rights. *See id.* at 371-72 (noting involuntary termination of parental rights "requires strict application of statutory standards").

**Statutory Requirements for Involuntary Termination of Parental Rights**

Before terminating parental rights, the family court must find clear and convincing evidence[4] to support each of the three parts of the standard established by KRS[5] 625.090. First, the child must have been found to be an "abused or neglected" child as defined by KRS 600.020(1). KRS 625.090(1)(a). Second, the family court must find at least one ground of parental unfitness as set forth in KRS 625.090(2). Third, termination must be in the child's best interest. KRS 625.090(1)(c). In determining the child's best interest and whether there are ground(s) of parental unfitness, the family court must consider the factors listed in KRS 625.090(3).

---

[4] *Clear and convincing evidence* "does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *Commonwealth, Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010) (internal quotation marks and citations omitted).

[5] Kentucky Revised Statutes.

**Requirements for Reviewing Involuntary Termination of Parental Rights**

"[T]ermination of parental rights is a grave action which the courts must conduct with utmost caution." *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359 (Ky. 2022) (internal quotation marks and footnote omitted). Thus, the evidence to support termination must be clear and convincing. KRS 625.090; *see also Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 1403, 71 L. Ed. 2d 599 (1982) (holding due process requires proof by at least clear and convincing evidence for termination of parental rights).

Even so, the decision of a family court to involuntarily terminate parental rights is accorded great deference on appellate review. The family court's factual findings are reviewed under the "clearly erroneous" standard of CR[6] 52.01,[7] meaning they shall not be disturbed unless they are not supported by substantial evidence. *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116 (Ky. App. 1998). We review the family court's determination that termination of parental rights is in a child's best interest for abuse of discretion. *D.J.D. v. Cabinet for Health and Family Services*, 350 S.W.3d 833, 837 (Ky. App. 2011).

---

[6] Kentucky Rules of Civil Procedure.

[7] CR 52.01 states in pertinent part: "Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

**Family Court Made Statutorily Required Findings**

The family court made the findings required in KRS 625.090 by clear and convincing evidence – specifically including 1) Child being an abused or neglected child, 2) at least one ground of parental unfitness, and 3) termination being in Child's best interest.  And based upon our review of the record, substantial evidence supports the family court's factual findings on these matters.  The family court also appropriately considered factors listed in KRS 625.090(3) for assessing whether termination was in Child's best interest.

**No Reversible Error in Family Court's Finding That Child Was Abused or Neglected**

The family court noted the prior adjudication that Child was abused or neglected entered in the DNA case in January 2022.  The family court also made an independent finding, based on clear and convincing evidence presented at trial, that Child is an abused or neglected child since Mother failed to make enough progress on her case plan to allow for Child's safe return.  Specifically, the family court found Mother failed to fully comply with case plan requirements for substance abuse and mental health treatment, was often sleepy or inattentive at visits with Child, and had been arrested eleven times since the DNA case was filed.

Moreover, the family court did not accept Mother's explanation that difficulties posed by her typical third shift working hours caused all these problems.[8]

Based on our review of the record, the family court's findings that Child had previously been adjudicated abused or neglected and remained so based on Mother's lack of full compliance with case plan requirements for permitting Child's safe return are supported by substantial evidence and are not clearly erroneous. Next, we address its findings of grounds of parental unfitness.

**No Error in Finding at Least One Ground of Parental Unfitness as Set Forth in KRS 625.090(2)**

The record adequately supports the family court's determination that the Cabinet proved the existence of at least one ground of parental unfitness by clear and convincing evidence. Specifically, the record clearly – even indisputably – supports the family court's finding of the ground set forth in KRS 625.090(2)(j): "That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]"

---

[8] Though not raised on appeal, Mother's attorney argued at trial that factors such as Mother's working third shift and her lack of transportation hampered her ability to meet case plan requirements. Nonetheless, we must defer to the family court's assessments of witness credibility and the weight of the evidence. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) ("[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court.").

Ample evidence in the record shows Child was in Cabinet custody and foster care since late October 2021, about 22 months before the TPR petition was filed in early September 2023.  In short, there is no error in the family court's finding of at least one ground of parental unfitness.[9]  Lastly, we address the family court's best interest determination.

**Family Court's Factual Findings Regarding Child's Best Interest are Supported by Substantial Evidence and the Family Court Did Not Abuse its Discretion in Finding Termination in Child's Best Interest**

The family court quoted KRS 625.090(3) and made findings regarding each best interest factor listed in KRS 625.090(3), namely:  1) mental illness or intellectual disability which would consistently render the parent unable to meet the child's needs for extended time periods, 2) acts of abuse or neglect toward any child in the family, 3) whether the Cabinet made reasonable reunification efforts prior to filing the petition for termination if the child was placed with the Cabinet, 4) the parent's efforts and adjustments in his/her conduct and circumstances to make a return to the parent's home in the child's best interest within a reasonable time considering the child's age, 5) the child's physical, emotional, and mental health and prospects for improvement if termination were ordered, and 6) the parent's payment or failure to pay for a reasonable portion of the child's care if

---

[9] The family court also found other grounds of parental unfitness set forth in KRS 625.090(2), but we need not address whether these other grounds are supported by the evidence since only one KRS 625.090(2) ground is required to support termination.

financially able to do so.  Other than the first factor, the family court found all factors favored termination.

Regarding the first factor, the family court found no evidence that Mother was properly diagnosed with mental illness or an intellectual disability. Regarding the second factor, the family court found the evidence presented at trial was sufficient to convince it Child was abused or neglected while in Mother's care. It also found Child further neglected because of Mother's failure to fully comply with case plan requirements so Child could be safely returned to her custody.

Regarding the third factor, the family court found the Cabinet rendered reasonable reunification efforts by providing appropriate referrals to services including mental health and substance abuse assessments, parenting classes, counseling, and supervised visitation.  The family court also found that the Cabinet proved it offered Mother all reasonable reunification services available in the community and that it was unlikely further services would bring about a lasting adjustment permitting Child's safe return.  Moreover, it rejected Mother's assertion that she could not always take advantage of offered mental health services due to her employment, since the court found Mother's usual third shift schedule would not conflict with mental health appointments.

Regarding the fourth factor (about parental efforts and adjustments), the family court found Mother completed parenting classes and obtained

employment but failed to fully comply with substance abuse or mental health treatment requirements, failed to maintain a suitable home, and to refrain from activities which led to incarceration. The family court also found Mother quit at least one job during the proceedings, was arrested several times, and was on probation. The court also noted the social worker's testimony that Mother failed to take personal responsibility and found that Mother's third shift employment should not interfere with scheduled visits other than Mother having to adjust her sleep schedule. It found Mother failed to improve her position so that Child could safely be returned to her care.

Regarding the fifth factor (Child's health and prospects for improvement), the family court noted a lack of testimony about Mother's bond with Child in contrast to the foster mother's testimony that Child was adjusting well and bonded to the foster family. The family court also found indications that Child's health (especially his mental and emotional health) had improved since he came to live with his foster family. It also found Child became upset and suffered night terrors after having visits with Mother based on the foster mother's testimony, and it noted that the social worker described Child as much less fearful since entering foster care. The court further noted the foster mother testified she and her family sought to adopt Child.

Regarding the sixth factor, the family court noted Mother was ordered to pay child support and had made payments for part of her monthly obligation during the last two months of 2023. However, it found she otherwise had failed to pay child support and was in arrears. The family court noted Mother testified to sending letters seeking a child support reduction. But it found that even if Mother were entitled to a reduction, she would still have a child support obligation; yet, other than the two payments made in late 2023, had failed to make any payments.

Based on our review of the record, the family court's factual findings regarding best interest considerations are supported by substantial evidence. Furthermore, we discern no abuse of discretion in the family court's determination that termination of Mother's parental rights was in Child's best interest.

In short, following our independent examination of the record and review of the family court's KRS 625.090 findings, "we agree with counsel's estimation and perceive no basis warranting relief on appeal." *A.C.*, 362 S.W.3d at 372. We grant counsel's motion to withdraw by separate order.

## CONCLUSION

For the foregoing reasons, we AFFIRM.


ALL CONCUR.

-12-

BRIEF FOR APPELLANT:

Brandi L. Jones
Oak Grove, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky