RENDERED: MARCH 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0583-ME

M.P.                                                              APPELLANT


APPEAL FROM MADISON CIRCUIT COURT
v.        HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 24-AD-00068


C.L.P., A MINOR CHILD; AND
COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: A. JONES, KAREM, AND MOYNAHAN, JUDGES.

JONES, A., JUDGE: M.P. ("Mother") brings this appeal from an order of the

Madison Circuit Court ("family court") terminating her parental rights to her minor

child, C.L.P. ("Child"). In accordance with *A.C. v. Cabinet for Health & Family

Services*, 362 S.W.3d 361 (Ky. App. 2012), Mother's appointed counsel, Nanci

Marian House, filed an *Anders*[1] brief, which was accompanied by a motion to withdraw. Thereafter, this Court advised Mother of her right to continue this appeal *pro se*, and she was provided with additional time to file a brief of her own choosing. Mother did not file a brief or take any other action in relation to this appeal. The Cabinet for Health and Family Services ("Cabinet") filed an appellee brief in support of termination.

Following careful review of the record, and all applicable law, we grant counsel's motion to withdraw by separate order and affirm the family court's order terminating Mother's parental rights.

## I. BACKGROUND

Child was born in October 2023 in Madison County, Kentucky. At the time of delivery, Mother tested positive for methamphetamine and amphetamine. Hospital staff reported that Mother had also tested positive for those substances during an emergency room visit approximately two months earlier. Child's umbilical cord tested positive for alcohol. Mother received minimal prenatal care during the pregnancy.

At the time of Child's birth, Mother had at least one active criminal matter pending stemming from mid-2023 charges, including alcohol intoxication in a public place, public intoxication (controlled substance), and operating a motor

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

vehicle under the influence of alcohol. Mother was unemployed and unhoused, having been evicted shortly before delivery. She reported that she had no plan for housing upon discharge and no funds to secure it. Other than a few clothing items, she had not obtained basic infant necessities.

Hospital staff referred Mother and Child to the Cabinet. Following a preliminary investigation, the Cabinet substantiated the hospital's concerns and concluded that Child would be at risk of harm if left in Mother's care. On October 24, 2023, the Cabinet filed a dependency, neglect, and abuse ("DNA") petition and was granted emergency custody. Child was placed in foster care.

Mother entered Chrysalis House, a long-term residential treatment facility, in late October 2023. A temporary custody order entered November 1, 2023, continued Child in the Cabinet's custody. In mid-November 2023, Child was permitted to reside with Mother at Chrysalis House. That placement ended on November 29, 2023, when Mother was discharged from the program after her mental health deteriorated, she refused to comply with treatment recommendations, and she was observed being hostile toward staff. During that period, Mother left Child unattended for approximately one hour while she went to a nearby gas station. Child was returned to foster care, where she has remained with the same foster family.

On December 6, 2023, Mother stipulated to neglect (risk of harm). A dispositional order entered December 20, 2023, committed Child to the Cabinet's custody. The initial permanency goal was reunification. Mother was ordered to comply with a case plan requiring parenting classes, substance abuse treatment, counseling, a mental health assessment with compliance with treatment recommendations, stable housing, employment, and regular drug screening.

From December 2023 through May 2024, Mother unsuccessfully attempted to complete a thirty-day residential treatment program required in connection with her ongoing DUI matter. During that period, she entered and was either discharged for noncompliance or voluntarily left against medical advice from multiple treatment facilities. On May 1, 2024, Mother entered residential treatment at ARC in Owensboro, Kentucky. This marked her eighth treatment attempt since October 2023. She successfully completed the program and was discharged in August 2024.

During the months in which Mother repeatedly entered and left treatment facilities, she had minimal contact with Child: three video calls and no in-person visitation for approximately eight and one-half months. The record reflects that Mother's lack of visitation was largely attributable to her failure to remain in one location long enough for consistent visitation to be arranged and her failure to timely notify the Cabinet after leaving facilities. During this period,

Mother provided no financial support and supplied no essential items for Child. The Cabinet filed a petition for involuntary termination of parental rights on July 3, 2024. Mother was served and appointed counsel.

After her discharge from ARC in August 2024, biweekly supervised visitation began. Mother remained unemployed and without stable housing until early February 2025, shortly before the final hearing. At the time of the hearing, she had been employed for approximately two weeks at a local convenience store, working forty hours per week on second shift. She had lost her driver's license as a result of her DUI conviction and had not regained it. She signed a lease for a two-bedroom apartment only days before the final hearing. Although utilities were connected and the apartment could potentially be made appropriate with additional preparation, it was largely unfurnished and contained little food at the time of inspection.

Mother was required to call in daily, Monday through Friday, for random drug screening following her discharge from ARC. While initially compliant, her participation declined in December 2024 and January 2025. Although no positive screens for illegal substances were documented during that time, her inconsistent reporting resulted in an incomplete record of negative screens. Several screens reflected the presence of a psychotropic medication previously prescribed to Mother. At the time of the hearing, however, Mother was

not engaged in ongoing mental health treatment with a consistent provider and testified that she took medication intermittently based on how she felt rather than pursuant to a structured treatment plan.

The final hearing was conducted via Zoom on February 20, 2025. Present were Mother and her counsel; Child's guardian *ad litem*; counsel for the Cabinet; Patricia Alexander, the assigned social worker; and Child's foster parents.

Social Worker Alexander testified consistent with the foregoing facts. She acknowledged that Mother had made some progress but opined that Mother had not made sufficient progress to permit Child's safe return within the reasonably foreseeable future. She expressed continuing concerns regarding Mother's mental health stability, inconsistent drug screening, prolonged absence from visitation, lack of reliable transportation, and failure to demonstrate stability in housing and employment. She testified that the Cabinet had offered all reasonable services and did not believe additional services would facilitate reunification. She further testified that Child was thriving in foster care, was bonded with the foster family, and was meeting developmental milestones in that placement.

Mother testified that she had struggled with substance abuse but believed she was now sober. She acknowledged difficulty completing prior treatment programs but attributed her departures to conflicts with staff or

dissatisfaction with program requirements. She disputed the assertion that Child was not bonded to her and described positive interactions during visitation. She testified that she generally complied with drug screening requirements but occasionally overslept after beginning full-time employment or encountered difficulties contacting the testing center due to the holidays and technical problems.

Following the hearing, the family court entered written Findings of Fact, Conclusions of Law, and an Order Terminating Parental Rights. The court found by clear and convincing evidence that Child was an abused or neglected child as defined in KRS[2] 600.020 and that termination was in Child's best interest pursuant to KRS 625.090(3). The court determined that the Cabinet had rendered reasonable reunification services and that Mother had failed to make sufficient and sustained adjustments in her circumstances to permit Child's safe return within a reasonable time, considering Child's age.

The court further found statutory grounds for termination under KRS 625.090(2), including that for a period of not less than six months Mother had failed or refused to provide, or had been substantially incapable of providing, essential parental care and protection, with no reasonable expectation of improvement in the foreseeable future and that for reasons other than poverty alone

---

[2] Kentucky Revised Statutes.

she had continuously or repeatedly failed to provide essential food, clothing, shelter, or medical care. The court concluded that Child would continue to be an abused or neglected child if returned to Mother and that the Cabinet was best qualified to receive custody. The court terminated Mother's parental rights and vested custody in the Cabinet with authority to place Child for adoption.

This appeal followed.

## II. ANALYSIS

In *A.C.*, this Court adopted the procedures identified in *Anders* to appeal from orders terminating parental rights when counsel has concluded that the appeal is frivolous. *A.C.*, 362 S.W.3d at 371. Counsel is required to "conduct[] a thorough, good-faith review of the record." *Id.* "Once counsel has reached the conclusion that the appeal is wholly frivolous, counsel 'should so advise the court and request permission to withdraw.'" *Id.* (quoting *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400). "An *Anders* brief supplements a motion to withdraw filed after counsel has conscientiously reviewed the record and found the appeal to be frivolous." *C.R.G. v. Cabinet for Health & Family Servs.*, 297 S.W.3d 914, 915 (Ky. App. 2009). Thereafter, this Court's duty is to review the record independently for prejudicial error. *Id.* This review "is akin to palpable error review requiring us only to ascertain error which 'affects the substantial rights of a party.'" *A.C.*, 362 S.W.3d at 370.

-8-

KRS 625.090 sets forth the requirements which must be met before a court in Kentucky can involuntarily terminate a parent's rights to his child. First, as it concerns this appeal, the lower court must determine that Child is an abused or neglected child or that Child was previously determined to be an abused or neglected child by a court of competent jurisdiction. KRS 625.090(1)(a)1.-2. Second, a petition seeking the termination of parental rights must have been filed by the Cabinet pursuant to KRS 620.180 or 625.050. KRS 625.090(1)(b)1. Third, the lower court must find that termination is in the best interest of Child. KRS 625.090(1)(c). Finally, the lower court must find by clear and convincing evidence the existence of one or more of the eleven grounds (a) through (k) listed in KRS 625.090(2). Even if all these requirements are met, the court may choose in its discretion not to terminate a parent's rights if the parent has established by a preponderance of the evidence that Child will not continue to be an abused or neglected child if returned to the parent. KRS 625.090(5).

After the termination hearing, the lower court is required to make findings of fact and conclusions of law supporting its decision on the termination petition. KRS 625.090(6). "Broad discretion is afforded to trial courts to determine whether parental rights should be terminated, and our review is limited to a clearly erroneous standard." *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452, 462 (Ky. 2021). Factual findings which are supported by

substantial evidence of record are not clearly erroneous. *R.M. v. Cabinet for Health and Family Services*, 620 S.W.3d 32, 37 (Ky. 2021). "Substantial evidence is that which is sufficient to induce conviction in the mind of a reasonable person." *Id.* "When the findings are supported by substantial evidence, then appellate review is limited to whether the facts support the legal conclusions which we review *de novo*. If the [lower] court's factual findings are not clearly erroneous and the legal conclusions are correct, we are limited to determining whether the [lower] court abused its discretion in applying the law to the facts." *H.L.O.*, 621 S.W.3d at 462 (citing CR[3] 61.02).

**Abuse or Neglect**. An abused or neglected child includes a child whose health or welfare is harmed or threatened with harm when her parent, among other things, "[e]ngages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child," KRS 600.020(1)(a)3., "[c]ontinuously or repeatedly fails or refuses to provide essential parental care and protection for the child," KRS 600.020(1)(a)4., abandons the child, KRS 600.020(1)(a)7., "[d]oes not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being[,]" KRS 600.020(a)8., or "[f]ails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the

---

[3] Kentucky Rules of Civil Procedure.

-10-

safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster care for fifteen (15) cumulative months out of forty-eight (48) months[,]" KRS 600.020(1)(a)9.

The family court found that Child had previously been adjudicated a neglected child and remained an abused or neglected child under KRS 600.020. The record reflects that Mother stipulated to neglect in December 2023 following Child's removal due to prenatal substance exposure and Mother's instability in housing and substance misuse. Additionally, the evidence adduced at the termination hearing revealed a pattern of substance abuse, failure to engage in consistent mental health treatment and either the inability or unwillingness to maintain consistent employment and housing, placing child at a risk for future harm if returned to Mother's care. Both Mother's prior stipulation and the evidence presented at the final hearing support the trial court's determination that Child met the statutory definition of an abused or neglected child.

**Filing of the Petition**. The Cabinet filed its petition for involuntary termination of parental rights on July 3, 2024, after Child had been committed to its custody. The statutory filing requirement of KRS 625.090(1)(b) was therefore satisfied.

**Grounds for Termination**. The family court found multiple statutory grounds under KRS 625.090(2), including that (1) that for a period of not

less than six months Mother had continuously or repeatedly failed or refused to provide, or had been substantially incapable of providing, essential parental care and protection, and there was no reasonable expectation of improvement in the immediately foreseeable future, KRS 625.090(2)(e); and (2) that for reasons other than poverty alone, Mother had continuously or repeatedly failed to provide essential food, clothing, shelter, or medical care reasonably necessary and available for Child's well-being, and there was no reasonable expectation of significant improvement in the foreseeable future, KRS 625.090(2)(g).

The record supports these findings. Although Mother completed treatment at ARC, she did so only after multiple failed attempts at other facilities. Following discharge, she failed to consistently comply with drug screening requirements, did not engage in structured ongoing mental health treatment, and did not secure stable housing or employment until days or weeks before the final hearing. She provided no consistent financial support and minimal material support. It is also notable that during this time, she failed to consistently maintain contact with the Cabinet, which impeded the Cabinet's ability to facilitate visitation between Mother and Child, preventing them from establishing an appropriate parent-child bond.

In short, substantial evidence supports the family court's conclusion that these statutory grounds were established by clear and convincing evidence.[4]

**<u>Best Interest</u>**.  Finally, the family court concluded that termination was in Child's best interest after considering the factors set forth in KRS 625.090(3).  The record supports that determination.

The Cabinet presented evidence that it provided extensive reunification services to Mother throughout the life of the case.  Those services included case planning, referrals for substance abuse treatment, mental health assessment and treatment, parenting classes, housing assistance, employment referrals, and supervised visitation.  The Cabinet also paid for drug screening and repeatedly attempted to facilitate Mother's compliance with her case plan.  Despite these efforts, Mother struggled to demonstrate sustained progress.

The family court appropriately acknowledged that Mother completed certain components of her case plan.  She ultimately completed residential

---

[4] The family court also found that Child had been removed from Mother's care "more than two (2) times in a twenty-four (24) month period." *See* KRS 625.090(2)(c).  The record reflects that Child was removed at birth, briefly returned to Mother while she resided at Chrysalis House, and removed again following Mother's discharge from that program.  Thus, the evidence appears to establish two removals within a twenty-four-month period—not "more than two (2) times" as required by the statute.  However, this discrepancy does not affect the validity of the termination judgment.  Under the language of KRS 625.090(2), the existence of only one of the grounds in that section need be proven by clear and convincing evidence. *Commonwealth, Cabinet for Health & Family Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010).  Because the family court's findings under KRS 625.090(2)(e) and (g) are supported by substantial evidence, any error as to subsection (c) is harmless.

-13-

treatment at ARC in August 2024. She underwent mental health assessment and completed parenting classes. These efforts reflect some degree of progress.

However, substantial evidence supports the court's conclusion that Mother failed to demonstrate the consistency and stability necessary to safely parent this Child within a reasonable time. Mother entered and left multiple treatment facilities before completing ARC. After discharge, she did not consistently comply with daily drug-screen call-in requirements. Although no positive screens were documented during the later stages of the case, her inconsistent reporting left gaps in the record. Mother was not engaged in structured, ongoing mental health treatment at the time of the hearing and testified that she took psychotropic medication intermittently based on how she felt rather than pursuant to medical supervision.

Mother also failed to demonstrate sustained stability in housing and employment. She obtained employment and signed a lease only days or weeks before the final hearing. At the time of inspection, the apartment was largely unfurnished and not fully prepared for a young child. Mother acknowledged she had not established six months of stable housing or employment.

The family court also considered Child's attachment and need for permanence. Mother had no in-person visitation with Child for approximately eight and one-half months. Testimony indicated that Child had bonded with her

foster family and was thriving in that placement. In contrast, the evidence did not demonstrate a significant parental bond between Mother and Child. Delay in achieving permanency would only further solidify Child's attachment elsewhere.

The record further reflects concerns regarding Mother's prioritization of her own preferences over Child's needs. Mother declined to pursue reinstatement of her driver's license despite Child's need for reliable transportation to therapy appointments. She attributed missed drug-screen call-ins to oversleeping after beginning employment. While these explanations were offered, the family court was entitled to weigh them against Child's need for consistent, reliable parenting.

Although Mother might, with additional time, be able to complete remaining aspects of her case plan, termination decisions must be made in light of Child's age and need for permanency. KRS 625.090(1)(c). The family court reasonably concluded that Mother had been afforded numerous opportunities over many months to stabilize her circumstances and that further delay would not be in Child's best interest. Given Child's young age, her bond with her foster placement, Mother's history of instability, and her failure to demonstrate sustained improvement, substantial evidence supports the family court's determination that termination of Mother's parental rights was in Child's best interest.

## III. CONCLUSION

For the foregoing reasons, we affirm the Madison Circuit Court's order terminating Mother's parental rights.

A separate order granting Nanci Marian House's motion to withdraw as Mother's counsel will be entered this same date.

ALL CONCUR.

BRIEF FOR APPELLANT:

Nanci M. House
Winchester, Kentucky

BRIEF FOR APPELLEE:

Dilissa G. Milburn
Mayfield, Kentucky